Alfred E. BROWN, Appellant,

v.

The STATE of Texas.

No. 1045–95.

Court of Criminal Appeals of Texas, En Banc.

Sept. 10, 1997.

Ralph L. Gonzalez, Richmond, for appellant.

John Harrity, Asst. Dist. Atty., Richmond, Matthew Paul, State's Atty., Austin, for State.

Before the court en banc.

*OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW*

OVERSTREET, Judge.

Appellant was charged by indictment with the offense of murder, pursuant to V.T.C.A. Penal Code § 19.02, alleged to have been committed on or about July 17, 1992, in Fort Bend County. In June of 1994, in the 268th Judicial District Court of Fort Bend County, appellant was found guilty by a jury. The court assessed punishment at imprisonment for 12 years confinement in the Texas Department of Criminal Justice, Institutional Division. The conviction and sentence were reversed by the Fourteenth Court of Appeals. *Brown v. State*, 906 S.W.2d 565 (Tex. App.—Houston [14th Dist.], 1995). We granted the State's sole ground for review.[1]

## I. SUMMARY OF PERTINENT FACTS

The record reflects that on the evening of July 17, 1992, appellant was drinking beer and talking with friends in the parking lot of an apartment complex. Appellant was involved in an altercation with James McLean, an individual with whom he had an encounter one week prior, in which McLean and some other individuals had beaten appellant. Appellant testified that following the altercation on the day in question, he obtained a .25 caliber handgun in order to protect himself and his friends from McLean and his associates, who were known to possess and discharge firearms in the vicinity of the apartment complex. Appellant, who is right-handed, testified that he held the handgun in his left hand because of a debilitating injury to his right hand. Appellant testified that during the course of the events in question, the handgun accidentally fired when he was bumped from behind by another person, Coleman, while raising the handgun. Coleman testified that he bumped appellant and the handgun fired. Appellant testified that the shot that fatally wounded the victim, Joseph Caraballo, an acquaintance and associate of appellant, was fired accidentally.[2]

## II. COURT OF APPEALS' HOLDING

The court of appeals held that it was reversible error to deny the defendant an affirmative defensive jury instruction regarding a required finding of voluntariness of the defendant's act. The court of appeals, relying on *George v. State*, 681 S.W.2d 43 (Tex.Cr. App.1984), stated that "[w]here the evidence warrants it, a defendant is entitled to a requested charge on the issue of the voluntariness of his acts." *Brown, supra* at 567 (cit-

---

1. Appellant's ground reads:
   The Court of Criminal Appeals should review its earlier decisions and establish a bright line rule regarding the necessity of a voluntary conduct instruction in the jury charge. The court of appeals erred in determining that the trial court should have submitted a jury instruction on "voluntary" conduct, as the state had the burden of proving beyond a reasonable doubt that the offense was committed "intentionally and knowingly", (sic) which by definition includes voluntarily.

2. The record reveals that the deceased was not one of the persons appellant was at odds with, but a person aligned with appellant.

ing *Garcia v. State,* 605 S.W.2d 565 (Tex.Cr. App.1980)).

Additionally, the court of appeals stated that a "defendant's testimony alone may be sufficient to raise a defensive theory requiring a [jury] charge." *Brown, supra,* at 566–67 (citing *Warren v. State,* 565 S.W.2d 931 (Tex.Cr.App.1978); and *Pimentel v. State,* 710 S.W.2d 764 (Tex.App.—San Antonio 1986, pet. ref'd)).

Citing *Simpkins v. State,* 590 S.W.2d 129 (Tex.Cr.App.1979), the court of appeals also stated that because the "issue of accident, or involuntary conduct, was raised by the evidence in *Simpkins,* the defense properly requested and obtained an instruction on involuntary conduct." *Brown, supra,* at 568.

Finally, the court of appeals cited *Whitehead v. State,* 696 S.W.2d 221 (Tex.App.—San Antonio 1985, pet. ref'd) for the proposition that if the required "evidence of an independent event, such as the conduct of a third party," is met, a defendant is entitled to an instruction on involuntary conduct. *Brown, supra,* 906 S.W.2d at 568.

## III. STATE'S CLAIM

The State contends that at present, case law is divided with regard to the circumstances in which a jury instruction regarding voluntary conduct is required, thus necessitating a bright line rule.

The State asserts that " 'voluntariness' is a part of, and subsumed by, the statutory requirement that the offense of murder be committed 'intentionally' or 'knowingly'." Thus, the State argues, appellant's requested instruction on voluntary conduct would only be a denial of an element of the offense of murder, rather than a true defense to the charged offense. The State quotes from *Cannon v. State,* 691 S.W.2d 664, 676 (Tex. Cr.App.1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986), which stated that, "it is well established that 'denial of a defendant's requested instruction is not error where the requested instruction is an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case.' "

Additionally, the State argues that "[I]f the absence of voluntary conduct is not a true 'defense,' an instruction thereon would seem to be an improper comment on the weight of the evidence."

Finally, the State argues that *Williams v. State,* 630 S.W.2d 640 (Tex.Cr.App.1982) and *Alford v. State,* 866 S.W.2d 619 (Tex.Cr.App. 1993) embody the "errant path" from which the "flawed 'defense' of voluntariness" flows. The State asserts that the *Williams* holding, followed by *Alford,* stands for the proposition that the "former *defense* of accident is now performed by the requirement of 'voluntary' action contained in Section 6.01(a) of the Penal Code." *Id.* (citing *Williams, supra,* 630 S.W.2d at 644) (emphasis in original). *Alford,* the State argues, continued this trend in the "concept that the absence of 'voluntary' conduct constitutes a *defense* to prosecution that which is in some fashion distinct from the State's burden of proving intentional or knowing conduct." Citing the foregoing reasons, the State asks that this Court establish a bright line rule regarding the necessity of a voluntary conduct instruction in the jury charge.

## IV. ANALYSIS

### 1. JURY INSTRUCTION

Appellant requested that the jury charge include a required finding of voluntariness with regard to the commission of the offense. The trial court denied appellant's request.

*Court's Charge to Jury*

The trial court's charge to the jury stated in pertinent part:

Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual.

A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.

A person acts knowingly, or with knowledge, with respect to a result of his con-

duct when he is aware that his conduct is reasonably certain to cause the result.

\* \* \* \* \* \*

A person is criminally responsible if the result would not have occurred but for his conduct. . . .

Absent in the trial court's charge to the jury is any mention of voluntary conduct on the part of the actor.

### Appellant's Requested Charge

Appellant's requested jury charge, denied by the trial court, included a required finding of voluntariness. Specifically, appellant stated:

> I would like an instruction on an involuntary act, that specifically being, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission, or possession[;] conduct is not rendered involuntary merely because a person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occasion in question the Defendant, Alfred Brown, did cause the death of Joseph Caraballo by shooting him with a gun as alleged in the indictment, but you further believe from the evidence or have a reasonable doubt thereof that the shooting was the result of an *accidental* discharge of the gun and was not the *voluntary* act or conduct of the Defendant, you will acquit the Defendant and say by your verdict not guilty. (emphasis added).

### 2. EVIDENTIARY SUFFICIENCY

██ Any evidence raised and admitted at trial—regardless of its substantive character—that raises a defensive theory to the charged offense, requires a jury charge thereon.

A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theo-

ry requiring a charge. *Williams v. State, supra,* 630 S.W.2d at 643 (quoting *Warren v. State, supra,* 565 S.W.2d 931) (citations omitted).

Appellant testified at trial that the handgun in his possession accidentally discharged after he was bumped from behind by Ryan Coleman. Coleman also testified at trial that his bumping appellant precipitated the discharge of the gun and that idiosyncracies of the handgun may have also allowed its discharge.

This Court has previously held:

> In determining whether any defensive charge should be given, the credibility of evidence or whether it is controverted or conflicts with other evidence in the case may not be considered. When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury. (citations omitted) . . . . This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. (citation omitted). When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury. (citation omitted). The weight of the evidence in support of an instruction is immaterial.

*Woodfox v. State,* 742 S.W.2d 408, 409–10 (Tex.Cr.App.1987).

██ Appellant's own testimony may raise issues of sufficiency with regard to a required jury charge on voluntariness. "[C]onduct [is not] rendered involuntary merely because an accused does not intend the result of his conduct." *George, supra,* 681 S.W.2d at 45. In the instant case, Coleman's corroborating testimony simply added to the threshold evidentiary requirements consistent with this Court's holdings in *George* and the cases cited therein. Thus, "[i]f the issue is raised by the evidence, a jury may be charged that a defendant should be *acquitted* if there is reasonable doubt as to whether *he* voluntarily engaged in the conduct of which he is accused." *Williams, supra,* 630 S.W.2d at 644 (emphasis added).

■ The defendant in *George* was convicted of aggravated assault by shooting the victim with a handgun. The defendant testified at trial that the shooting was accidental, that "the hammer [of the handgun he was holding] slipped off [his] thumb." *George, supra,* 681 S.W.2d at 47. In regard to the analysis of the defendant's conduct, this Court said that "we hold as a matter of law the fact that when such conduct also includes a bodily movement of the accused sufficient for the gun to discharge a bullet, without more-such as *precipitation by another individual,* as in *Garcia* and *Simpkins* [ ]—a jury need not be charged on the matter of whether the accused voluntarily engaged in the conduct with which he is charged." *Id.* (emphasis added). The evidence admitted at appellant's trial satisfies this requirement for an affirmative jury charge on voluntariness.

■ "[T]he issue of the voluntariness of one's conduct, or bodily movements, is separate from the issue of one's mental state." *Adanandus v. State,* 866 S.W.2d 210, 230 (Tex.Cr.App.1993) (citing *George, supra,* 681 S.W.2d 43). The defendant in *Adanandus* was convicted of murder, committed in the course of robbery. The defendant requested a jury charge regarding voluntary conduct, asserting that the admitted evidence demonstrated that the fatal firing of the handgun resulted accidentally during a struggle with the victim. This Court, in overruling Adanandus' point of error and affirming the trial court's finding, stated that "there is no evidence that the act of shooting the deceased was involuntary conduct. There is no evidence that [defendant] and the deceased struggled over the gun ... There is no evidence that the gun was involuntarily discharged." *Adanandus, supra,* 866 S.W.2d at 230.

We have also recently held:
Section 6.01(a) of the Texas Penal Code states that a person commits an offense only if he engages in voluntary conduct, including an act, an omission, or possession. Only if the evidence raises reasonable doubt that the defendant voluntarily engaged in the conduct charged should the jury be instructed to acquit. *George,* [*supra* ]. "Voluntariness," within the meaning of section 6.01(a), refers only to one's physical bodily movements. *Alford,* [*supra* ].

*McFarland v. State,* 928 S.W.2d 482, 513 (Tex.Cr.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). While the defense of accident is no longer present in the penal code, this Court has long held that homicide that is not the result of voluntary conduct is not to be criminally punished. *See Alford, supra,* 866 S.W.2d at 622–24, and the cases cited therein.

The defendant in *McFarland,* was convicted of murder, committed in the course of robbery. As in *Adanandus,* the defendant requested a jury charge regarding voluntary conduct, asserting that the admitted evidence demonstrated that the fatal firing of the handgun may have resulted accidentally during a struggle with the victim. This Court, in overruling McFarland's point of error and affirming the trial court's finding, stated that at "[a]t no time does the record raise any evidence that [defendant's] conduct was not voluntary ... Because [defendant] raises no evidence to show that he did not voluntarily engage in the conduct charged, the trial court did not err in refusing [defendant's] requested instruction." *McFarland, supra,* 928 S.W.2d at 513–14. There was no testimony from either McFarland or any other witnesses that raised and/or satisfied the evidentiary requirement for such a jury charge. Had such evidence been admitted, the trial court would have been required to submit the requested instruction thereon.

The State argues that voluntariness is subsumed by the "intentionally and knowingly" requirements of the offense of murder. This Court's decisions in *Williams, George, Alford,* and *Adanandus* hold otherwise.

## V. CONCLUSION

■ We hold that if the admitted evidence raises the issue of the conduct of the actor not being voluntary, then the jury shall be charged, when requested, on the issue of voluntariness. The trial court did not grant appellant's request and the court of appeals correctly reversed the trial court. We hereby affirm the decision of the court of appeals.

PRICE, Judge, dissenting.

I respectfully dissent to the majority's decision to affirm the court of appeals because I do not believe that article 6.01(a) constitutes a defense and, therefore, appellant was not entitled to an affirmative defensive jury instruction regarding the voluntariness of his act.

## I.

Despite the majority's claim that "case law is clear regarding voluntariness and the evidentiary requirements for a jury charge thereon," prior case law reveals that the decision to include a voluntary conduct charge often turned on untenable factual distinctions. Maj. op. at 280.

This Court's first opportunity to interpret Section 6.01(a) came in *Dockery v. State*, 542 S.W.2d 644 (Tex.Crim.App.1975) (opinion on reh'g).[1] Dockery testified that he was sleeping face down on a mattress on the floor of a bedroom with a .32 caliber pistol in his hand. When the deceased and two others entered, he "raised up off" the floor and the pistol "accidentally went off, just that fast." *Id.* at 648. Dockery explained to the two eyewitnesses that he "was trying to uncock the pistol and the pistol went off." *Id.* at 648. Writing for the majority, Judge Roberts stated "that a homicide may still be accidental under our new Penal Code," but held that the appellant's actions in this instance were sufficiently voluntary to establish the offense of criminally negligent homicide and therefore a charge on voluntary conduct was not necessary. *Id.* at 649. As noted by Justice Hudson in his concurring opinion in this case, the courts' journey along an "errant path" began with this holding. *Brown v. State*, 906 S.W.2d at 565 (Tex.App.—Houston [14th Dist.] 1995). By using the word "accident" in reference to Section 6.01(a), this Court revived the defense of accident which was intentionally abandoned by the Legislature.

It is difficult to ascertain why Judge Roberts interpreted Section 6.01(a) as he did in *Dockery*. That opinion gives us no guidance in this area because it fails to cite any authority for the determination that the Legis-lature intended a voluntary conduct instruction to be synonymous with the defense of accident. As shown below, subsequent case law perpetuated this misperception.

In *Garcia v. State*, 605 S.W.2d 565 (Tex. Crim.App.1980), the defendant and the deceased were walking together along a canal. The deceased gave the defendant a handgun with the hammer "already pulled." *Id.* at 566. When the defendant told the deceased that he was going to throw the gun into the canal, the deceased grabbed the defendant's elbow with one hand and the gun with the other in an attempt to take it away from defendant. At this point, the gun went off. This Court held that this testimony *was sufficient* to raise an issue of fact as to "the voluntariness of defendant's conduct," and further stated that an accused is entitled to an instruction on every defensive matter raised by the evidence. *Id.* at 566 (citing *Esparza v. State*, 520 S.W.2d 891 (Tex.Crim. App.1975)).

This Court in *Williams v. State*, 630 S.W.2d 640 (Tex.Crim.App.1982) (opinion on reh'g), formally denounced the "defense" of accident. In *Williams* the defendant and the complainant quarreled in their car after leaving a bar together. While driving, defendant claimed that the complainant grabbed the steering wheel and caused him to "slam on the brakes" to avoid an accident. *Id.* at 642. Complainant injured her nose when she hit the car's windshield. The defendant argued that he was entitled to a defensive charge on accident because he did not intend the resulting injuries. *Id.* at 644. We disagreed. This Court explained that "there is no law on the defense of accident in the present penal code, and the bench and bar would be well advised to avoid the term 'accident' in connection with offenses defined by the present penal code." *Id.* But, in the next sentence we held that "the function of the former defense of accident is performed now by the requirement of 6.01(a)." *Id.* Given this misleading statement, it is understandable that even today the majority continues to view "voluntary conduct" as the converse of accidental conduct.

1. The current version of our Penal Code was enacted in 1973.

In *George v. State*, 681 S.W.2d 43 (Tex. Crim.App.1984), the defendant was found guilty of assault when he demanded a dollar from the little brother of his friend. When the boy refused, defendant drew a revolver from his pocket, thumbed the hammer partially back and pointed it at the boy's face. The gun discharged. Defendant testified at trial that when the little boy "turned his face away," the hammer "slipped off my thumb" and "the gun went off." *Id.* at 44. This Court held that since the hammer slipped off defendant's thumb, "it had to be that the thumb holding the hammer partially back released just enough pressure for the hammer to 'slip' forward." *Id.* at 47. This movement, we determined, however slight, was bodily movement within the meaning of 1.07(a)(1). *Id.* Accordingly, the trial court properly refused to instruct the jury on the defense of voluntary conduct. We also noted that whether appellant's precise bodily movement that released the hammer was voluntary or involuntary is of little moment when the issue is whether accused recklessly caused bodily injury. *Id.*

This theory was later compromised by our discussion in *Joiner v. State*, 727 S.W.2d 534 (Tex.Crim.App.1987), where we quote Justice Butt's dissent from the lower court for the proposition that voluntary conduct is separate from the culpable mental state. In *Joiner*, defendant and the victim argued over money. Appellant hit the victim and the victim "bucked" defendant. *Id.* at 535. In response, defendant then pulled a gun and pointed it at the victim's head. The gun discharged, killing her. Defendant then cried out, "Oh my God, I done killed her.... It was an accident." *Id.* We held that the facts of this case did not entitle defendant to a charge on the absence of voluntary conduct.

Recently, this court again attempted to clarify the purpose of 6.01(a) in *Alford v. State*, 866 S.W.2d 619 (Tex.Crim.App.1993). Alford testified at trial that his participation in the alleged crime was compelled by threats of imminent death or serious bodily injury. The trial court's jury charge stated that a defendant may only be convicted for a voluntary act and bears the burden of prov-ing the defense of duress by a preponderance of the evidence. Alford objected to the charge as a violation of due process, arguing the charge delegated the burden of proof to both parties on the same issue. *Id.* at 621. Essentially, Alford argued that a direct correlation exists between the proof of voluntariness and the negation of duress. Addressing this contention, this Court explained that since voluntary conduct refers only to one's physical bodily movements, in attempting to prove duress, defendant was not required to disprove voluntariness. We also defined voluntary conduct by holding that "the term 'voluntary' as utilized in 6.01(a) means the absence of an accidental act, omission or possession." *Id.* at 624. Once again, the court's reference to the term accidental in its definition of voluntary conduct, as pointed out by Judge Clinton in his concurrence, announced "a vacuous definition rife with ambiguity, such that reasonable judges and jurors must guess at its intendment." *Id.* at 625 (Clinton concurring).

The common link in these cases is the continued assertion that the former defense of accident is now performed by Section 6.01(a) of the Penal Code. However, the precise circumstance which makes conduct "accidental" and, therefore, involuntary continues to elude the courts. Due to this confused state of the law, this Court needs to reexamine the purpose and function of section 6.01(a) to determine when, and if, a jury should receive an instruction on voluntary conduct.

## II.

The inquiry begins with the literal text of the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We start here because the literal text of the statute is the law—it is the version approved and adopted by the legislators. *Id.* It is the only definitive evidence of the legislators' intent. Furthermore, we are constitutionally required to follow the text adopted by the Legislature. *See* TEX. CONST. art II, § 1. Thus, if the meaning of the literal text, when read applying the canons of construction, is plain and unambiguous, we give effect to that plain meaning. *Boykin*, 818 S.W.2d at 785. There

is, necessarily, an exception to this rule: when literal application of a statute leads to absurd consequences or results in ambiguity, then *and only then*, may a court interpret a statute by using *extra* textual sources. *Id.* at 785–86. These sources, as set out in the Code Construction Act, include: (1) circumstances under which the statute was enacted; (2) legislative history;[2] (3) common law or former statutory provisions; (4) consequences of a particular construction; and (5) title (caption), preamble and emergency provision. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1988), *made applicable to Penal Code by,* TEX. PENAL CODE ANN. § 1.05(b) (Vernon 1994).

With the foregoing in mind, I turn to Section 6.01(a). Section 6.01(a) provides in part: "A person commits an offense only if he voluntarily engages in conduct, including an act, an omission or possession." TEX. PENAL CODE ANN. § 6.01 (Vernon 1994). Definitions for "act" and "conduct" are set out in Section 1.07 of the Penal Code. "Conduct" means an act or an omission plus its accompanying mental state, and "act" means a bodily movement, whether voluntary or involuntary. *Id.* at § 1.07(a)(1) & (10). Applying these definitions, Section 6.01(a) would read: a person commits an offense only if he voluntarily engages in a bodily movement, an omission or possession, and its accompanying mental state. This means that the issue of the voluntariness of one's bodily movement is distinct from the issue of one's mental state. However, this does not evince the legislators' intended purpose for 6.01(a).

Conducting a plain meaning analysis reveals that Section 6.01(a) is not a defense to criminal responsibility. Chapter 6—where 6.01 is found—entitled "Culpability Generally" does not contain the statutory defenses to a crime. Rather, defenses are located in Chapter 8 of the Code and justifications are found in Chapter 9. If the Legislature intended 6.01 to function as a defense or justification, they could have included it in either of the applicable chapters.[3] They did not.

After analyzing the literal text of 6.01(a), ambiguities remain. What is the definition of voluntary conduct? What purpose does 6.01(a) serve? Does 6.01(a) add a separate element of voluntary conduct to every offense? Does it require the inclusion of a voluntary act instruction in the abstract and/or application portion of a jury charge? To resolve these issues, I look to *extra* textual sources.

### III.

In 1973 the Legislature enacted our present Penal Code. Although Section 6.01(a) was not extensively discussed in the legislative committee meetings or floor debates, reference was made to Chapter Six and its role in the Code. Representative Simmons, reporting out of the House Criminal Jurisprudence Committee, addressed the House concerning the proposed Code:

> What we basically do, members, is we track existing law in regard to culpability, the general provisions pertaining to culpability, the criminal responsibility for conduct of another, the criminal defenses, the defenses to criminal responsibility and the justifications excluding criminal responsibility . . . . all of Title 2 basically recodifies existing law. Your committee tried as best as we could to track existing law, to clean up the language. . . .[4]

Debate on Tex. H.B. 514 on the Floor of the House, 63rd Leg., R.S. (May 21, 1973) (tape recording available from the Texas Legislature). It is difficult to glean legislative intent from these brief general comments.

The practice commentary to 6.01(a) briefly discusses the evolution of Texas law on the prerequisite of voluntary conduct to criminal responsibility. Seth S. Searcy III & James R. Patterson, Practice Commentary, TEX. PENAL CODE ANN. § 6.01 (Vernon 1974). The commentators note that to convict, as an elementary rule, there are two requirements: (1) a criminal act; and (2) a defendant's agency in the production of such act. *Id.*

---

2. This includes practice commentaries. *Hines v. State,* 906 S.W.2d 518 (Tex.Crim.App.1995).

3. Under the former Penal Code, accident was a defense and was designated as such in Article 39.

TEX. PENAL CODE ANN. art. 39 (Branch 1956) (repealed 1974).

4. Title 2 of the Penal Code contains Chapters 6, 7, 8 and 9.

(citing *Willard v. State*, 27 Tex.App. 386, 11 S.W. 453 (Ct.App.1889)). Subsection (a) of 6.01 codifies the first requirement by limiting criminal responsibility to voluntary acts. Searcy & Patterson, Practice Commentary at § 6.01.

The enacted Penal Code does not contain a definition of "voluntary act." However, the 1970 proposed Code did. *Id.* It defined a "voluntary act" as "a bodily movement performed consciously as a result of effort or determination." *Id.* The practice commentary explains that despite the deletion, "the willed act requirement remains, probably as an element of due process, although because of the deletion this section does not state completely this basic principle." *Id.* In other words, for conduct to support criminal responsibility, the conduct must "*include* a voluntary act ... so that, for example, a drunk driver charged with involuntary manslaughter may not successfully defend with the argument he fell asleep before the collision since his conduct included the voluntary act of starting up and driving the car." *Id.* Interestingly, these comments suggest that one voluntary act—regardless of subsequent acts—may form a basis for criminal responsibility.

Because the Legislature expressed an intent to model our Code after the Model Penal Code, we may also look to the Model Code for guidance. TEX. ANN. PENAL STATUTES § 6.01 (Branch 1974). The comparable American Law Institute Model Penal Code as well as its commentaries offer more guidance on this issue than the Texas Code. In relevant part, the Model Penal Code section explains:

> The following are not voluntary acts within the meaning of this Section:
>
> (a) a reflex or convulsion;
>
> (b) a bodily movement during unconsciousness or sleep;
>
> (c) conduct during hypnosis or resulting from hypnotic suggestion;
>
> (d) a bodily movement that otherwise is not a product of the effort or determi-

nation of the actor, either conscious or habitual.

MODEL PENAL CODE § 2.01. The Model Penal Code attempts to define a voluntary act in terms of conditions which render an act involuntary. WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., 180 HANDBOOK ON CRIMINAL LAW § 25 (1972). I would adopt this definition of voluntary conduct and disavow *Alford's* definition.

Although a voluntary act is an absolute requirement for criminal liability, it does not follow that every act up to the moment that the harm is caused must be voluntary. *Id.* This concept is best demonstrated by an example: *A* who is subject to frequent fainting spells voluntarily drives a car; while driving he faints, loses control of the vehicle and injures a pedestrian; *A* would be criminally responsible. *Id.* Here, *A's* voluntary act consists of driving the car, and if the necessary mental state can be established as of the time he entered the car, it is enough to find *A* guilty of a crime. *Id.*

Section 6.01(a) functions as a statutory fail-safe. Due process guarantees that criminal liability be predicated on at least one voluntary act. In all criminal prosecutions the State must prove that the defendant committed at least one voluntary act—voluntary conduct is an implied element of every crime.[5] Because it is an implied element, the State is not required to allege it in the charging instrument. For most offenses, proof of a voluntary act, although a separate component, is achieved by proving the other elements of the offense.

Take the offense of murder, for example. Murder under Section 19.02(b)(1) of the Penal Code consists of three elements: (1) intentionally or knowingly, (2) causing the death, (3) of an individual. TEX. PENAL CODE § 19.02 (Vernon 1994). To prove the commission of this offense, the State must show that a defendant committed at least one voluntary act which intentionally or knowingly resulted in another's death. Proof of the intentional or knowing element will often encompass the proof of the voluntary act. By

---

5. As noted by one commentator, "[c]urrent statutory formulations rarely treat an involuntary act as a matter of defense. It is instead almost universally treated as a required element of every offense." PAUL H. ROBINSON, 263 CRIMINAL LAW DEFENSES § 171(d) (1984).

introducing evidence that the defendant acted intentionally or knowingly, the state will also establish he acted voluntarily. Section 6.01(a) exists for those rare offenses when the proof of voluntary conduct is not subsumed within the proof of the other elements of the offense.

One question remains—is a defendant entitled to a voluntary conduct instruction in the jury charge? As just explained, voluntary conduct is an implied element of every offense. It is well-settled that a defendant is not entitled to a defensive charge where the defendant's theory simply negates an element of the offense. *Sanders v. State*, 707 S.W.2d 78 (Tex.Crim.App.1986). Therefore, a defendant is not entitled to an affirmative submission applying the law of 6.01(a) because it would simply be an attempt to negate one or more elements of the offense.

On the other hand, a defendant is entitled to an instruction explaining legal requirements raised by the evidence. *See Golden v. State*, 851 S.W.2d 291, 295 (Tex.Crim.App. 1993) (holding defendant entitled to instruction on the legal requirement of corroboration of accomplice witness testimony). I believe the evidence will raise the 6.01(a) issue only when proof of the elements of the offense do not satisfactorily establish voluntary conduct. In those cases, if a defendant requests an instruction which tracks the language of 6.01(a), a trial court should include that instruction in the abstract and application portion of the jury charge.

With this new understanding of 6.01 in mind, I turn to the facts of appellant's case.

### IV.

Applying this analysis to the case at bar establishes that appellant was not entitled to his requested instruction on voluntary conduct. In appellant's brief to this Court, he

contends that 6.01(a) provides a defense to criminal responsibility. In this appellant is clearly wrong. Section 6.01(a) is not a defense and he was not entitled to a charge as such.

In the present case, proof of the elements of the offense also establish the necessary voluntary conduct. Proof of the culpable mental state for the offense of murder, intentionally or knowingly, and the fact that the defendant voluntarily aimed a loaded gun at another human being, insured that the jury found appellant's conduct to be sufficiently voluntary. Therefore, no separate instruction on voluntariness is necessary.

Appellant, however, did request the inclusion of a voluntary conduct instruction in the jury charge.[6] Under the facts of this case, appellant was not entitled to this instruction. The trial court properly denied his request

### V.

After a thorough analysis of Section 6.01, I believe the trial court properly denied appellant's request for an affirmative submission on voluntary conduct. I would reverse the court of appeals and affirm the trial court. Because the majority does not, I must dissent.

McCORMICK, P.J., and KELLER and MANSFIELD, JJ., join.

---

6. Appellant submitted the following instruction:
   I would like an instruction on an involuntary act, that specifically being, you are instructed that a person commits an offense only if he voluntarily engages in conduct, including an act, omission or possession, conduct [sic] is not rendered involuntary merely because a person did not intend the results of his conduct. Therefore, if you believe from the evidence beyond a reasonable doubt that on the occa-

sion in question the Defendant, Alfred Brown, did cause the death of Joseph Caraballo by shooting him with a gun as alleged in the indictment, but you further believe from the evidence or have a reasonable doubt thereof that the shooting was the result of an accidental discharge of the gun and was not the voluntary act or conduct of the Defendant, you will acquit the Defendant and say by your verdict not guilty.