NO. 07-00-0445-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 26, 2001

______________________________

ROBERT A. BROWN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE COUNTY CRIMINAL COURT AT LAW NO. 2 OF HARRIS COUNTY;

NO. 0993855; HONORABLE MICHAEL PETERS, JUDGE

_______________________________

Before BOYD, C.J., and QUINN and REAVIS, JJ.

In three points of asserted error, appellant Robert A. Brown challenges his conviction of driving while intoxicated (DWI) and the resulting punishment of 60 days confinement in the Harris County jail and a fine of $350, probated for a period of 15 months. For reasons we later recount, we affirm the judgment of the trial court.

Late in the evening of April 1, 2000, Houston Police Officer Craig Cummings stopped appellant after he struck a median while entering a highway.  Believing appellant was intoxicated, Cummings called a member of the Houston Police Department’s (HPD) DWI task force to investigate that possibility.  Officer Chris Green responded to the call and, after conducting some field tests, arrested appellant and transported him to the HPD’s “central intox” unit.  HPD dispatch records show they arrived at the station at 12:55 a.m.

Upon arrival, appellant was handed over to Officer George Miller, who conducted a breath test on appellant. The printout generated by the Intoxilyzer 5000 breath machine indicated the testing process began at 1:05 a.m.  Appellant was next delivered to Officer Richard Martinez, who had appellant perform a series of sobriety tests recorded on video tape.

In his three points of error, appellant contends the trial court erred in 1) denying his motion for a new trial on the basis that the prosecution withheld exculpatory information; 2) admitting evidence of the results of the breath test when the HPD’s breath test program was not certified by the Department of Public Safety (DPS); and 3) denying his request for an instruction that the jury was to disregard the breath test results if it found the breath test program was not properly certified by the DPS.

The factual basis for appellant’s first point centers on a DPS regulation that requires a 15-minute observation period before administering a breath alcohol test.  Officer Miller, who conducted the test, averred he had observed appellant for the required time period.  Appellant sought to establish that this could not be true because the computer dispatch records
(footnote: 1) and Intoxilyzer test result printout showed there was only a ten-minute period between the arrival at the police station and the start of the test.  The State responds these records do not undermine Miller’s testimony because there was no evidence that the dispatch system clock and the Intoxilyzer clock were synchronized.  In response to a defense request, the trial court charged the jury that:

unless you believe from the evidence beyond a reasonable doubt that Officer Miller remained in the presence of the defendant for at least fifteen minutes, [] or if you have a reasonable doubt thereof, then you will totally disregard the results of the intoxilyzer test and not consider it for any purpose.

At the hearing on the new trial motion, appellant sought to establish two items of assertedly exculpatory evidence not provided to him at trial.  The seminal case of 
Brady v. Maryland
, 373 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), established the principle that suppression by the prosecution of exculpatory evidence material to the issues of guilt or punishment violates constitutional due process.  373 U.S. at 87.  
See also
 
Thomas v. State
, 841 S.W.2d 399 (Tex.Crim.App. 1992). 

Thus, the prosecution violates its duty and denies an accused’s due process rights when a prosecutor 1) fails to disclose evidence, 2) which is favorable to the accused, and 3) creates a probability of detriment to the defendant sufficient to undermine confidence in the outcome of the proceeding.  
U.S. v. Bagley
, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); 
Thomas
, 841 S.W.2d at 404.  Evidence is material if there is a reasonable probability that if the evidence had been disclosed, the outcome of the proceeding would have been different.  
Bagley
, 473 U.S. at 681-82.

The first item allegedly withheld by the prosecution concerns the procedure by which the HPD sets the internal clocks on its Intoxilyzer machines.  At the hearing on the motion for new trial, appellant called Debbie Stevens, the technical supervisor of the HPD’s crime lab.  She testified that part of her job is to monitor the status of the Intoxilyzer machines by using a computer in the crime lab and modem to get data from the machines.  Part of that process includes a comparison of the clock in her lab computer to the Intoxilyzer’s internal clock.  If there is a variation of more than two minutes, the Intoxilyzer clock is reset to the same time as the computer clock.  Appellant also introduced records which showed the clock in the Intoxilyzer machine used to test him had a variation of three minutes and was reset on May 10 and July 3, 2000.  Considering the potential variances, appellant argues the breath test could have been administered as early as just after 1:02 a.m. or as late as 1:09 a.m.  Thus, under Officer Miller’s testimony that he and appellant arrived at the station at 12:55 a.m., Miller could not have observed appellant for the mandatory 15-minute period.  That being so, he concludes this is exculpatory evidence which was not furnished him by the prosecution in violation of the 
Brady
 doctrine.

In advancing that proposition, appellant also emphasizes the fact that he had obtained a discovery order for records concerning “repairs, changes, deletions, modifications, or adjustments made to” the Intoxilyzer machine for a period of six months surrounding the date of his arrest.  He theorizes that the records concerning the clock adjustments fell within the request and the failure to disclose the records also mandates reversal.  However, the relevant issue in this appeal is whether there was a 
Brady
 violation which would require reversal.  To hold otherwise would result in reversal of appellant’s conviction as a discovery sanction, and appellant has cited no authority that would support such a result.

The evidence showing the Intoxilyzer clock was reset did not rise to the status of a 
Brady
 violation.  On both occasions when the clock was reset, it was three minutes slower than the clock in Stevens computer.  The inference the jury reasonably could draw from that evidence is that if the Intoxilyzer clock was inaccurrate on the date of appellant’s arrest, the time of the breath test was later than the time indicated on the machine printout.  More importantly, without evidence of the relationship between the Intoxilyzer clock and the dispatch system clock at the relevant time, the resetting of the 
Intoxilyzer clock at other times was not material.

That observation, however, leads us to the second item of evidence upon which appellant’s challenge is based.  At the new trial hearing, Stevens testified that during the course of the trial, she told the prosecutor that the clock in her computer, which was used to set the Intoxilyzer clock, was within one minute of the clock used in the dispatch system.  The prosecutor did not provide this information to the defense.  It supported appellant’s theory that Officer Miller could not have observed appellant for 15 minutes before administering the breath test, which was favorable to appellant.  The prosecution’s failure to provide this information to appellant violated its duty as set out in 
Brady
.  This conclusion does not end our inquiry.

The prosecution makes no attempt to explain this failure, but only argues any error was harmless because at the new trial hearing, Stevens also testified that after trial she learned what she told the prosecutor was incorrect because the crime lab computer terminal which she used for comparison was actually not synchronized with the dispatch computer system as she believed during trial.

Appellant cites 
Kyles v. Whitley
, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) for the proposition that if we find the undisclosed evidence material, under the standard articulated in the 
Bagley 
case, there is no need to conduct a harmless error review and reversal is required.  He argues this is true because the 
Bagley 
materiality standard requires a finding of a reasonable probability that disclosure of the evidence would have affected the outcome of the trial.  473 U.S. at 682. Thus, the question presented here is exactly what evidence we consider in conducting a 
Bagley 
materiality review; namely, may we only consider the undisclosed information possessed by the prosecutor at the time of the trial, or may we also consider evidence bearing on the question later obtained at the new trial hearing?

We have found no Texas authority directly addressing this question.  Even so, we note the decision in 
Givens v. State
, 749 S.W.2d 954 (Tex.App.–Fort Worth 1988, pet. ref’d), in which the court held that if the defense already knew facts that were withheld by the prosecution, the accused has not been deprived of due process, and is not entitled to 
Brady
 relief.  
Id.
 at 957.
 
 In arriving at that decision, the 
Givens
 court considered more than the mere evidence itself; namely, whether the defendant could have and did discover the evidence prior to the trial. 
 Likewise, in making our decision, we believe our inquiry is not limited to merely considering the evidence and the prosecutor’s knowledge at the time of the trial, but we may consider evidence later produced that would affect the materiality of unrevealed evidence; namely, all the surrounding circumstances.  
See Means v. State
, 429 S.W.2d 494-95 (Tex.Crim.App. 1968).  Here, at the new trial hearing, the trial judge also heard Stevens testify that she subsequently learned the information she had given the prosecutor at trial was not correct.  Because at the new trial hearing, the trial judge learned that the evidence in question was not correct, we cannot say that the judge erred in determining the failure to inform the defense of the incorrect evidence was not material and not sufficient to undermine confidence in the outcome of the trial.  Appellant’s first point is overruled.

In his second point, appellant argues the trial court reversibly erred in refusing to suppress the results of the breath test because the HPD’s breath test program was not certified by the DPS.  Pursuant to appellant’s subpoena calling for all applications and certifications of the HPD’s breath test program, the HPD only produced two documents, a 1969 application and a 1970 certification.  The certification certificate recites that the HPD has complied with the requirements for a “chemical breath testing program for alcoholic influence” and “pursuant to continued compliance with the prescribed requirements this certificate is issued for an indefinite period.”  While Officer Stevens testified that the HPD’s program was certified by the DPS at the time of the occurrence, no later certificate was introduced into evidence.

In advancing his second point proposition, appellant argues the certification of the HPD’s breath testing program is invalid because the “DPS program requiring certification of the program did not exist until 1976.”  However, he cites no authority supporting that theory, other than “Chapter 19" of the Texas Administrative Code which, he says, was promulgated by the DPS in 1976.  A review of the development of the Texas Administrative Code and statutes governing chemical breath testing demonstrates that appellant’s argument is without merit.

The requirement that chemical breath testing be performed pursuant to standards established by the DPS was created by the legislature in 1969.  
See
 Act of June 4, 1969, R.S., Ch. 434 § 3(b), S.B. 74, 61
st
 Leg., 1969 Tex.Gen.Laws 1468.
(footnote: 2)  At that time, regulations of individual agencies, such as those promulgated by the DPS as required by the statute, were not collected by a single agency.  This was changed in 1976 by the passage of the Administrative Procedure and Texas Register Act in 1975.  S.B. 41, 64
th
 Leg., R.S., Ch.61, 1975 Tex.Gen.Laws 136.  This law required agencies to file their existing regulations with the Secretary of State by March 1, 1976.  The Texas Administrative Code, which is the codified version to those regulations, was not created until 1977.  
See 
Texas Administrative Code Act, H.B. 1969, 71
st
 Leg. R.S., Ch. 678 13, 1977 Tex. Gen. Laws 1703 (Now codified as Tex. Govt. Code § 2002.051 (Vernon 2000)).

The 1969 statute and the subsequent issuance of a certificate by the DPS to the HPD are evidence that the certificate was issued pursuant to DPS regulations.  The fact that those regulations were later assembled in the Texas Administrative Code does not show that the regulations did not exist before they were collected in that Code, nor does it show that an earlier certificate did not continue to be valid.

There is nothing in this record showing that the HPD’s 1970 certification had been revoked, suspended or was otherwise ineffective.  Indeed, the only trial evidence showed the HPD’s program was certified by the DPS.  Any lack of recent documentation of the previously approved program is not sufficient to show the 1970 certificate has lapsed and the program was not certified at the time of appellant’s test.  Appellant’s second point is overruled.

In his third point, appellant contends the trial court erred in not giving a jury instruction that the jury was to disregard the results of the breath test if it found that the breath test program was not certified by the DPS.  In advancing that argument, he cites 
Brown v. State,
 955 S.W.2d 276 (Tex.Crim.App.1997), which he argues stands for the proposition that a defendant is entitled to an instruction on any defensive theory raised by the evidence.  
Id.
 at 279.  We agree with the proposition as stated by the court.  However, for the reasons we have discussed above, the question was not raised by the evidence.  Without evidence on the issue, no instruction was required.  Parenthetically, we note that the jury was instructed that it was to disregard the breath test results if it found, or had a reasonable doubt, that the test was not conducted according to the DPS regulations.  Appellant’s third and final point is overruled.

In summary, all of appellant’s points are overruled and the judgment of the trial court is affirmed.

John T. Boyd

 Chief Justice

Do not publish.

FOOTNOTES
1:
The evidence showed these records are created by the Department’s computer aided dispatch system when actions are taken by dispatchers or by officers using mobile data terminals (MDTs) in their cars.  It also showed the clocks in the MDTs are synchronized with the dispatcher’s computer system.  Officer Green testified that he logged his arrival at the station using the MDT in his car.

2:
The current version of this statute appears at section 724.016 of the Texas Transportation Code Annotated (Vernon 1999).