In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00126-CR
______________________________


BARBARA ELAINE JEFFERY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 29872-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            On August 14, 2002, sixteen-year-old Barbara Elaine Jeffery entered a Gladewater
convenience store, emptied the cash register, confiscated the store's surveillance tape, and shot the
clerk, Wendy McDonald, four times. As McDonald lay dying from her wounds, she was able to
describe Jeffery to the first law enforcement officer on the scene and to recount what had happened
during the course of the robbery. By the time officers caught up with Jeffery the next day and found
her cowering under a bed in a relative's home, Jeffery had robbed two other stores, wounding one
clerk and killing another. 
            Certified to stand trial as an adult, Jeffery was indicted for the offense of capital murder. A
Gregg County jury found Jeffery guilty as charged, and the trial court, as required, automatically
assessed punishment at life imprisonment. Jeffery now appeals, contending (1) her statement to law
enforcement officials was inadmissible because they failed to comply with Sections 51.095, 52.02,
and 52.025 of the Texas Family Code; (2) the trial court abused its discretion by refusing to instruct
the jury on the affirmative defense of duress; and (3) she was denied an effective appeal by the court
reporter's failure to include certain exhibits in the appellate record. We affirm.
Juvenile Statement
            In her first and second points of error, Jeffery argues her rights were violated when the State
allegedly failed to comply with Sections 51.095, 52.02, and 52.025 of the Texas Family Code,
thereby rendering inadmissible her written statement to law enforcement officials. Although Jeffery
admits that a magistrate did provide the warnings laid out in Section 51.095 and otherwise complied
with the statute, she contends the magistrate never tested her understanding of the warnings and
could not, therefore, have determined that she knowingly, intelligently, and voluntarily waived her
rights. Also, because Jeffery was allegedly taken to the area of the Camp County Sheriff's
Department used for booking adults before she was taken to the designated juvenile processing office
located in the same building, she argues that the trial court erred in determining her statement
admissible. 
            When reviewing a ruling on a motion to suppress, an appellate court gives great deference
to a trial court's determination of historical facts. Roquemore v. State, 60 S.W.3d 862, 866 (Tex.
Crim. App. 2001). The evidence is viewed in the light most favorable to the trial court's ruling and,
although  mixed  questions  of  law  and  fact  that  do  not  turn  on  witness  credibility  are
reviewed de novo, those questions of law and fact that do turn on witness credibility and demeanor
are reviewed under a standard of almost total deference, id., because "the trial court is the sole trier
of fact and judge of the credibility of the witnesses and the weight to be given their testimony," State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). If the trial court's ruling is correct under any
theory of law applicable to the case, it will be sustained. Id. at 855–56.
            Under Section 51.095, the statement of a child is admissible if it is made in writing, while
the child is confined, in custody, or in possession of the Department of Protective and Regulatory
Services, and
(A) the statement shows that the child has at some time before the making of the
statement received from a magistrate a warning that:

(i) the child may remain silent and not make any statement at all and that any
statement that the child makes may be used in evidence against the child;

(ii) the child has the right to have an attorney present to advise the child either
prior to any questioning or during the questioning;

(iii) if the child is unable to employ an attorney, the child has the right to have
an attorney appointed to counsel with the child before or during any
interviews with peace officers or attorneys representing the state; and

(iv) the child has the right to terminate the interview at any time;

(B) and:

(i) the statement must be signed in the presence of a magistrate by the child
with no law enforcement officer or prosecuting attorney present, except that
a magistrate may require a bailiff or a law enforcement officer if a bailiff is
not available to be present if the magistrate determines that the presence of
the bailiff or law enforcement officer is necessary for the personal safety of
the magistrate or other court personnel, provided that the bailiff or law
enforcement officer may not carry a weapon in the presence of the child; and

(ii) the magistrate must be fully convinced that the child understands the
nature and contents of the statement and that the child is signing the same
voluntarily, and if a statement is taken, the magistrate must sign a written
statement verifying the foregoing requisites have been met;

(C) the child knowingly, intelligently, and voluntarily waives these rights before and
during the making of the statement and signs the statement in the presence of a
magistrate; and

(D) the magistrate certifies that the magistrate has examined the child independent
of any law enforcement officer or prosecuting attorney, except as required to ensure
the personal safety of the magistrate or other court personnel, and has determined that
the child understands the nature and contents of the statement and has knowingly,
intelligently, and voluntarily waived these rights . . . .

Tex. Fam. Code Ann. § 51.095(a)(1), (d) (Vernon 2002).
            The record reflects—and the trial court explicitly found—that Jeffery was transported directly
to the Camp County juvenile processing office within twenty minutes of her arrest and, fifteen
minutes later, met alone with a magistrate who advised her of her rights under Section
51.095(a)(1)(A). When asked if she understood the warnings and whether she wanted to waive her
rights and voluntarily give a statement, Jeffery answered affirmatively. The magistrate thereafter
allowed law enforcement officials to enter the office to question Jeffery, resulting in her dictating
a three-page, single-spaced statement, confessing her involvement in robbing the store and shooting
McDonald. The unsigned statement was turned over to the magistrate who, once again alone with
Jeffery, read the statement aloud, asked Jeffery to verify the correctness of the information, and
asked whether she wanted to sign the statement. Jeffery again answered affirmatively and, in the
magistrate's presence, signed the statement at the bottom of each page, adopting it as her own.             Jeffery argued at the suppression hearing, and continues arguing in this appeal, that she may
have told the magistrate she understood the Section 51.095 admonishments at the time of their
meeting, but she did so only to "get it over with." Jeffery explained that she simply did not
understand some of the terms used in the warnings or how they applied to her situation and that, had
the magistrate tested her understanding, the need for further explanation would have been apparent. 
To the contrary, however, the magistrate testified that this was not the first time she had advised
Jeffery of her rights and that Jeffery not only did not ask any questions, but also indicated she
understood the admonishments and wished to waive her rights anyway. The magistrate also testified
that, while she did not question Jeffery as to the meaning of specific warnings, she did explain in
greater detail those points she thought Jeffery might not have understood. 
            Weighing these conflicting points of view, the trial court found the magistrate's testimony
more credible than Jeffery's and determined that Jeffery knowingly, intelligently, and voluntarily
waived her rights before speaking with investigators and confessing her involvement in the crime. 
This the court was entitled to do. Viewing the evidence in the light most favorable to its ruling, we
determine the evidence reasonably supports this conclusion. See Roquemore, 60 S.W.3d at 866. 
Therefore, we defer to the trial court's judgment and hold that there was no violation of Section
51.095 that would require Jeffery's statement to be suppressed.
            Although Jeffery further contends the State violated Sections 52.02 and 52.025 by allegedly
taking her to the area of the Camp County Sheriff's Department used for booking adults before she
was taken to the designated juvenile processing office,


 this complaint appears for the first time on
appeal. It was not raised in Jeffery's motion to suppress and was not addressed at either the pretrial
hearing or at the trial itself. In fact, Jeffery's own trial testimony indicates just the opposite. She
testified she was taken to the jailer and booked only after she had met with the magistrate, talked
with the investigators, and signed her statement. To preserve error for appellate review, the
complaining party must not only make and obtain a ruling on a timely and specific objection, but the
point of error on appeal must also comport with the objection made at trial. Tex. R. App. P. 33.1;
Geuder v. State, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); Wilson v. State, 71 S.W.3d 346, 349
(Tex. Crim. App. 2002). Having failed to meet these requirements, Jeffery has preserved nothing
for our review, effectively waiving her complaint regarding Sections 52.02 and 52.025 of the Texas
Family Code.
            Even if we were to determine that the Texas Family Code provisions discussed above had
been violated and the trial court erred by admitting Jeffery's statement, we would still hold any such
error to be harmless because Jeffery's trial testimony only confirmed the facts detailed in the
statement.


 See Jones v. State, 843 S.W.2d 487, 493 (Tex. Crim. App. 1992); Amunson v. State, 928
S.W.2d 601, 608 (Tex. App.—San Antonio 1996, pet. ref'd) ("When the defendant offers the same
evidence to which he earlier objected, he is not in a position to complain on appeal.") Jeffery
detailed her involvement in the robbery and killing of McDonald and even admitted to having
committed extraneous crimes, including the murder of another store clerk the same evening. 
Specific to the charges in this case, the State asked: "On August 14th of 2002, did you intentionally
or knowingly, while in the course of committing theft of property of Wendy McDonald and in the
process of committing a robbery, shoot and kill her?" To which Jeffery simply responded: "Yes,
sir." Jeffery readily admitted all the elements of the charged offense, leaving no room to complain
on appeal that her statement was erroneously admitted at trial.
Duress Instruction
            In her third point of error, Jeffery contends the trial court erred by refusing to instruct the jury
on the affirmative defense of duress. Specifically, Jeffery argues that she was entitled to the
instruction because she engaged in the proscribed conduct in response to threats of imminent death
or serious bodily injury at the hands of her alleged accomplice, Luster. Jeffery's own testimony,
however, foreclosed the availability of an instruction on duress because she repeatedly made clear
that she was acting on her own and that Luster's involvement was only as an unwitting participant.
            A defendant is entitled to an instruction on every defense raised by the evidence, if timely
requested; and a trial court's refusal to give the instruction in that circumstance abuses its discretion. 
Brown v. State, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). This is true "regardless of whether
[the evidence] is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the
opinion that the testimony is not entitled to belief," id., because the rule "is designed to insure that
the jury, not the judge, will decide the relative credibility of the evidence," Granger v. State, 3
S.W.3d 36, 38 (Tex. Crim. App. 1999) (citing Woodfox v. State, 742 S.W.2d 408, 409–10 (Tex.
Crim. App. 1987) ("When a judge refuses to give an instruction on a defensive issue because the
evidence supporting it is weak or unbelievable, he effectively substitutes his judgment . . . for that
of the jury.")).
            In this case, however, the evidence fails to raise the affirmative defense of duress, which
applies when the accused "engaged in the proscribed conduct because he was compelled to do so by
threat  of  imminent  death  or  serious  bodily  injury  to  himself  or  another."  Tex.  Pen.  Code
Ann. § 8.05(a) (Vernon 2003). To raise the defense, the evidence must show both compulsion and
imminency. Compulsion "exists only if the force or threat of force would render a person of
reasonable firmness incapable of resisting the pressure," and imminency exists where the person
making the threat intends and is prepared to carry out the threat immediately on the accused's failure
to commit the charged offense. Tex. Pen. Code Ann. § 8.05(c) (Vernon 2003); Anguish v. State, 
 
991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (threat of future harm cannot
be construed as "imminent" under statute).
            Jeffery's claim on appeal is that Luster was so angry with her for standing idly by as others
stole his property that he threatened to kill her if she lied to him and did not care what she had to do
to repay him. This, however, is not the story she related in either her confession or at trial. After
describing a party she attended with Luster the night before McDonald's murder, and explaining that
someone had stolen Luster's cell phone and a considerable amount of cash as he lay in a drunken
stupor on the hood of a car, Jeffery stated:
The next day . . . Roderick started thinking that I had something to do with jacking
him for his money and cell phone. He called me and was asking me who got his stuff
. . . . I felt bad about him [losing] his money because he was with me that night. Me
and Roderick are real close, he is like a brother and that is the reason I feel bad. He
told  me  that  I  was  going  to  help  him  get  his  bread  back.  He  was  kinda  mad
at me . . . and everybody else. He told me that I was going to have to get his bread
back and that he didn't care how or what I did to get the money. I told him that I
would get the money back but I didn't know how I was going to get it yet. I was
joking at first when I told him that I would rob somebody for it and he was laughing. 
I said it again and he said you ain[']t joking[, are you?] I told him to look at my face
because I wasn't playing and I was for real. I told him that we were going to go
somewhere so I could do this and he said okay and came and picked me up from my
cousin's house.

Jeffery  then  detailed  the  ensuing  spree,  including  the  robbery  and  shooting  of  McDonald. 
She half-heartedly apologized for the killings, rationalizing her actions by suggesting that others in
her position probably would have acted similarly, and then concluded: "Roderick put me up to this 
 
so he could get his money and plus I was doing it to help my mama. He didn't put the gun to my
head or anything and it was more my decision than his but he did put me up to it." 
            At trial, Jeffery further rejected the idea that she had acted under compulsion or imminent
threat of death or serious bodily injury. She again described Luster as being like a brother to her and
explained that, despite the theft of his cell phone and money, he did not seem upset about it and
certainly was not angry with her. Although Jeffery admits that Luster drove her to the scene of the
crime, she maintained at trial that he knew nothing of her plans. Jeffery testified that she provided
the gun, picked the location, and robbed and killed McDonald, and that she, and she alone, was
responsible for her actions. Even if the record could support an inference that Luster had threatened
Jeffery, the evidence supports neither the compulsory nature of the threats nor that they were
imminent. We hold, therefore, the trial court did not abuse its discretion in refusing to instruct the
jury on the affirmative defense of duress.
Effective Appeal
            In her fourth point of error, Jeffery complains that the court reporter failed to include in the
record two specific exhibits, which, if lost or destroyed, may warrant a new trial. See Tex. R. App.
P. 34.6(f). A motion to abate was filed, requesting that the trial court be permitted to conduct a
hearing to determine whether the exhibits were lost or destroyed; however, abatement is unnecessary
because the exhibits are not needed to effectively evaluate Jeffery's contentions.
 
            The missing exhibits—State's Exhibits 57 and 59—are two letters Jeffery testified she wrote
from jail. The contents of both were read into the record, and state, among other things, that Luster
had no knowledge of Jeffery's intentions regarding the robbery or shooting. Jeffery's appellate
counsel argues that, without the exhibits, which counsel suggests may not have been written by the
same person, she is unable to contest their authorship in support of her argument that Jeffery was
entitled to an instruction on the affirmative defense of duress. Although it is not clear how these
exhibits might support the argument in favor of a duress instruction, Jeffery is in no position to now
claim that someone else may have written the letters, having admitted at trial that she authored them. 
Jeffery's signature on one of the letters (State's Exhibit 57) was witnessed by a notary public at the
jail before it was mailed, and Jeffery admitted that letter was in her own handwriting. Jeffery
testified the other letter (State's Exhibit 59) was Jeffery's letter she sent to Brandy Henry. Because
the letters are consistent with each other and with Jeffery's testimony in denying Luster's
foreknowledge of Jeffery's plans, and because Jeffery admitted authoring them, the absence of the
actual exhibits from the record could not have hurt Jeffery's appeal, especially since both letters were
read into the record in their entirety.
Conclusion
            There was no error in the trial court's admission of Jeffery's statement to law enforcement
officials or in the court's refusal to instruct the jury on the affirmative defense of duress. Nor was 
 
 
Jeffery denied an effective appeal by the court reporter's failure to include certain exhibits in the
appellate record. Accordingly, we affirm the judgment of the trial court.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 19, 2004
Date Decided:             May 20, 2004

Do Not Publish