Opinion issued on October 16, 2003     
 












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00717-CR




THOMAS LEE STARKS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 887293

 
O P I N I O N
          A jury convicted appellant, Thomas Lee Starks, of aggravated assault. The jury
assessed punishment for 35 years confinement. On appeal, appellant contends that
(1) the trial court erred by refusing to include a self-defense instruction in the jury
charge; (2) the evidence was factually insufficient to support his conviction; (3) the
prosecutor made improper jury arguments during the guilt/innocence stage; and (4)
the prosecutor improperly commented on appellant’s pre-arrest and pre-Miranda
silence. We affirm.
Background
          William Lee, age 59, and his son Kaaba Lee, age 28, went to the Last Chance
Bar in Houston on the night of July 7, 2001. Before going into the bar, William Lee
(“Lee”) and Kaaba went across the street to the home of Edward Glover, where
Glover was cooking and several people they knew had gathered. Lee went into the
Last Chance to get a beer while Kaaba stayed at Glover’s. When Lee came back to
Glover’s, a dice game was taking place in Glover’s garage. At trial, Lee stated that
he, Kaaba, Glover, a man named Big Al, and appellant remained in the garage,
although only Kaaba and appellant were playing dice. Lee testified at trial that he and
Glover were talking on one side of the garage when appellant told Lee to be quiet. 
Lee replied that appellant should not tell a grown man to be quiet. At trial, Lee stated
that appellant then struck Lee in the face, hitting him in the eyes. After that, Lee only
remembered being hit, kicked, and badly beaten. Lee testified that he was eventually
able to leave the garage and go into Glover’s house, where the beating continued. 
Lee could not remember anything after the beating. He was in the hospital intensive
care unit for four days. Lee stated that the top row of his teeth had been kicked out
and that his eyes were swollen for several weeks after the beating. 
          Officer Tommy Phillips of the Houston Police Department testified that, when
he arrived at Glover’s home, he saw Lee bleeding from the mouth with swollen eyes
and lips and leaning over in the front yard of the house across from Glover’s. 
Because there was so much blood and so much damage had been done to Lee’s
mouth, Officer Phillips had difficulty understanding the answers Lee gave to Officer
Phillips’s questions. Officer Phillips stated that Lee’s front teeth were missing and
that he was worried that Lee had suffered a brain injury as a result of the beating. 
Officer Phillips testified that there was so much blood on the scene that it looked as
if someone had been shot or stabbed. Lee told Officer Phillips that he had been
beaten.
          Dr. Bradford Scott testified that he was one of the doctors working in the
emergency room of Ben Taub Hospital when Lee was admitted. Dr. Scott stated that
Lee’s face was severely swollen, that Lee had facial abrasions, and that there was
some internal bleeding behind Lee’s left eye. Lee was intubated in order to preserve
his ability to breathe. Dr. Scott stated that the injuries Lee sustained placed Lee at a
substantial risk of death. 
          Officer S. J. Anderson from the Houston Police Department’s Robbery
Division testified that, after the beating, Kaaba provided her with a license plate
number of the car appellant was driving. Officer Anderson traced the license plate
number to a car owned by appellant’s relatives. 
          Officer Anderson showed Lee a photospread, and Lee identified appellant as
the man who had assaulted him at Glover’s house. Officer Anderson showed Kaaba
a photospread, and Kaaba also identified appellant as the man who had beaten Lee. 
          Appellant went to the police station voluntarily to speak with Officer Anderson
and gave her the names of two women who he said were with him elsewhere that
night, Cynthia Dawkins and “VanLesa.” Appellant told Officer Anderson that he
was unable to provide her with the names of any other witnesses in Glover’s garage
that night.
          Glover, the owner of the house, testified that four or five men were in his
garage throwing dice on the evening of the assault. Glover stated that Lee was trying
to “run” the dice game between Kaaba and appellant, and that Glover told Lee to stay
out of the game. When the fight began, Glover stated that he was not in the garage
but that he could hear the sounds of a commotion. Glover went into the garage and
saw Lee and appellant fighting “with their fists.” Glover stated that he believed the
fight had started over the gambling and that Lee was being badly beaten by appellant.
Glover stated Lee was leaning over in one corner of the garage while appellant
continued to beat him. Glover never saw appellant kick Lee, and, although he
indicated in his testimony that both men were fighting, Glover also stated at the end
of his testimony that he never saw Lee strike appellant. Glover stated that Lee was
not fighting back because he was bleeding so badly at the time. Glover told appellant
to stop beating Lee and told appellant to leave, and then Glover helped Lee hide in
Glover’s house. Appellant initially left Glover’s garage, but then returned with a
woman. Appellant and the woman demanded that Glover open the door, and Glover
stated at trial that the woman told appellant that they should kill Glover. Appellant
and the woman took Glover’s house keys and a pocketknife from Glover’s pocket and
forced their way into the house. Appellant and the woman then dragged Lee out of
Glover’s house into the street. 
          The defense presented the testimony of Vincent Starks (“Vincent”), appellant’s
brother, who testified that Lee was running the dice game between Kaaba and
appellant and that appellant accused Lee of letting Kaaba cheat. Vincent testified that
he was in the garage at one point, watching the dice game, but at the time the fight
began, he was standing outside eating barbeque. Vincent said Lee and appellant
began “tussling” and that Lee swung at appellant with his fist. Appellant then struck
Lee, and Lee fell to the ground. When Lee fell to the ground, Vincent testified that
two women began to hit Lee with a telephone as he lay on the garage floor. Vincent
said that appellant never kicked Lee, and once Lee fell to the ground, he did not see
appellant hit Lee again. Vincent also testified that appellant knew several people in
the garage, including Vincent’s wife, appellant’s girlfriend, and another female
friend. 
          Anthony Hicks, the second defense witness, stated that he had known appellant
for 15 or 20 years. Hicks testified that he was also at Glover’s home at the time of the
fight and that appellant, appellant’s girlfriend, Vincent, Vincent’s wife, and another
woman were also at Glover’s house. According to Hicks, appellant and Lee were
both taking part in the dice game when the fight began and appellant accused Lee of
cheating at dice. Hicks testified that Lee swung at appellant first and appellant then
struck Lee once after Lee hit him. 
          Before the trial court charged the jury, appellant requested a self-defense
instruction be submitted to the jury. The trial court denied appellant’s requested
instruction.  In overruling appellant’s objection, the trial court stated that the
proposed deadly-force instruction was not applicable based upon the evidence and
that there was no applicable self-defense instruction to which appellant was entitled,
based on the charge of aggravated assault by serious bodily injury. The following
exchange occurred: 
[Defense Counsel:] . . . The Defense would object to the removal of, as
I understood the Court to say, remove the self-defense charge that’s in
here.

          [Court:] Well, if you read it it talks about deadly force. 

          [Defense Counsel:] Yes, sir.
 
[Court:] It wasn’t applicable based on the evidence. There is no self-defense that is applicable. 
 
[Defense Counsel:] Self-defense, defending himself against the use of
force, the degree of force is what makes a difference.
 
[Court:] If there was evidence, I’d probably put it in there, but I don’t
believe based on the state of the evidence that self-defense is warranted
in this case. 
 
[Defense Counsel:] Well, Judge, we got evidence—
 
[Court:] I understand what you—make your objection. I’m telling you
why it’s not coming in. I don’t have to tell you that, but I’ve got the
impression that the defense is that he didn’t do anything. 
 
[Defense Counsel:] No, the defense is that the man swung on him and
he swung back.
 
[Court:] Well, he’s not entitled to self-defense on an aggravated assault
for that. That is an aggravated assault, not an assault. That objection is
overruled. 
The jury returned a guilty verdict on the charge of aggravated assault and assessed
punishment for 35 years confinement. Discussion
          In four points of error, appellant challenges his conviction in the trial court. 
Appellant contends that: (1) the trial court erred by refusing to include a self-defense
instruction in the jury charge, (2) the evidence was factually insufficient to support
his conviction; (3) the prosecutor made improper jury arguments during the
guilt/innocence stage; and (4) the prosecutor improperly commented on appellant’s
pre-arrest and pre-Miranda silence. 
          Because appellant did not object at trial to the statements made by the
prosecutor that form the basis of his third and fourth points of error, he has waived
his right to complain of the arguments on appeal. See Cockrell v. State, 933 S.W.2d
73, 89 (Tex. Crim. App. 1996). Accordingly, we reach only appellant’s first and
second points of error.
Self-Defense Instruction
          In his first point of error, appellant contends that the trial court erred when it
denied a self-defense jury instruction that was raised by the evidence and had been
requested by appellant. Appellant claims that the trial court denied his requested jury
instruction on the basis that, because he was charged with aggravated assault, he was
not entitled to a jury instruction on self-defense. Appellant contends that his trial
counsel objected to this ruling and that the objection was overruled. In his brief,
appellant explains that his request for a self-defense instruction on aggravated assault
was justified because it was supported by evidence that the complaining witness hit
appellant first and that appellant was merely defending himself.


 In support, appellant
refers us to section 9.31 of the Texas Penal Code, which states that “a person is
justified in using force against another when and to the degree he reasonably believes
force is immediately necessary to protect himself against the other’s use or attempted
use of unlawful force.” Tex. Pen. Code Ann. § 9.31 (Vernon 2003).
          The exchange between the trial court and appellant’s trial counsel reveals that 
appellant’s requested written instruction apparently tracked the language of section
9.32 of the Texas Penal Code, which states, in part:
A person is justified in using deadly force against another: (1) if he
would be justified in using force against the other under Section 9.31;
(2) if a reasonable person in the actor’s situation would not have
retreated; and (3) when and to the degree he reasonably believes the
deadly force is necessary: (a) to protect himself against the other’s use
or attempted use of unlawful deadly force; or (b) to prevent the other’s
imminent commission of aggravated kidnapping, murder, sexual assault,
robbery or aggravated robbery. 
Tex. Pen. Code Ann. § 9.32(a) (Vernon 2003) (emphasis added). 
          A trial court must charge the jury on any defensive issue raised by the
evidence, “regardless of its substantive character.” Brown v. State, 955 S.W.2d 276,
279 (Tex. Crim. App. 1997).
A defendant is entitled to an affirmative defensive instruction on every
issue raised by the evidence regardless of whether it is strong, feeble,
unimpeached, or contradicted, and even if the trial court is of the
opinion that the testimony is not entitled to belief. The defendant’s
testimony alone may be sufficient to raise a defensive theory requiring
a charge.

Id. (quoting Williams v. State, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982)). 
Accordingly, appellant was entitled to an instruction on self-defense using deadly
force if the evidence showed that he used deadly force, and that he reasonably
believed his use of deadly force was immediately necessary to protect himself against
a use of deadly force by Lee, or the commission of aggravated kidnapping, murder,
sexual assault, robbery, or aggravated robbery by Lee, and that a reasonable person
in appellant’s position would not have retreated. 
          The evidence brought forth by the State and that elicited by appellant presented
two widely varying scenarios: under the State’s evidence, after Lee and appellant
exchanged words over the dice game, appellant was the aggressor and he proceeded
to repeatedly hit and kick Lee, inflicting injuries so extensive that Lee was required
to spend four days in an intensive care unit. Under appellant’s version of events,
presented by Vincent Starks, appellant’s brother, and Anthony Hicks, a long time
friend of appellant’s, Lee was the first to strike, and appellant responded with one
blow to Lee. Starks and Hicks testified that, after appellant hit Lee once, Lee fell to
the ground, where he was then beaten with a telephone by two women bystanders. 
The jury was thus presented with two versions of the events that transpired in
Glover’s garage: either Lee hit appellant once, or Lee never hit appellant and
appellant was the sole aggressor. There was no evidence presented by either side to
imply Lee used deadly force against appellant or that Lee was in the process of
committing aggravated kidnapping, murder, sexual assault, robbery or aggravated
robbery. Accordingly, appellant was not entitled to an instruction on self-defense/deadly force under section 9.32. However, the jury charge in this case not
only contained an instruction on aggravated assault, but also an instruction on the
lesser included offense of assault. With that instruction in the charge, the state of the
evidence was such that appellant was entitled to a section 9.31 self-defense
instruction.
          In order to preserve error relating to a jury charge, there must either be an
objection or a requested charge. Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim.
App. 1996). Here, appellant did not submit a jury charge containing an instruction
on self-defense under section 9.31. Accordingly, to preserve his point of error
regarding the trial court’s failure to include a self-defense instruction, appellant was
required to make a specific objection to the trial court’s charge. See Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon 1999) (defendant must distinctly specify each
ground of objection to the charge). To properly preserve an issue for appellate
review, there must be a timely objection that specifically states the legal basis for the
objection. Tex. R. App. P. 33.1; Rezac v. State, 782 S.W.2d 869, 870 (Tex. Crim.
App. 1990). The trial objection must have drawn the court’s attention to the
particular complaint later raised on appeal. See Little v. State, 758 S.W.2d 551, 564
(Tex. Crim. App. 1988). Appellant’s argument to the trial court was sufficient to
draw the court’s attention to his issue raised on appeal and, thus, properly preserved
error. We hold that it was error not to include a section 9.31 self-defense instruction
in the jury charge. 
          Having found appellant properly preserved error, we must determine if the trial
court committed reversible error in denying a request for self-defense. Error properly
preserved by an objection to the charge will require reversal “as long as the error is
not harmless.” Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). This means that any
actual harm, regardless of degree, is sufficient to require reversal. Hutch, 922 S.W.2d
at 171. To determine if there is any harm, the degree of harm must be weighed in
light of the entire jury charge, state of the evidence, counsels’ arguments, and any
other relevant information revealed by the trial record as a whole. Almanza, 686
S.W.2d at 171. Here, the jury convicted defendant on the greater offense of
aggravated assault. Once the jury convicted appellant of aggravated assault, having
been properly charged on that offense, it had no reason to consider whether appellant
might be guilty of the lessor-included offense of assault. See Clark v. State, 717
S.W.2d 910, 918 (Tex. Crim. App. 1986). Thus, although defendant was entitled to
a self-defense instruction for the lessor-included offense of simple assault, such error
was harmless because the jury need not reach the latter issue. 
          Accordingly, we overrule appellant’s first point of error.
Factual Sufficiency
          In his second point of error, appellant contends that the evidence is factually
insufficient to support his conviction for aggravated assault. In reviewing the factual
sufficiency of the evidence, we determine “whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of appellant’s
guilt is so obviously weak as to undermine confidence in the jury’s verdict, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
          Appellant refers to conflicts in the testimony of witnesses, specifically in the
testimony of Lee and that of Vincent and Hicks. Appellant points to Lee’s testimony
that, once appellant hit him, Lee was unable to see appellant or to determine where
he was in the garage. Because Vincent and Hicks testified that the fight began
outside the garage, not inside as Lee stated, and that Lee’s injuries were caused by the
women who accompanied appellant, not appellant himself, appellant argues that Lee’s
testimony cannot support his conviction. Appellant also points to conflicts between
Lee’s testimony and that given by Glover. Glover stated that Lee was participating
in the dice game, which Lee denied. Further, appellant notes that Glover stated he
was not talking to Lee when the fight began, as Lee contended. These conflicts in the
witnesses’ testimony, appellant contends, render Lee’s account of the events
unreliable in the face of what appellant characterizes as uncontradicted evidence that
appellant was not the person who inflicted serious bodily injury upon Lee.
          The jury, as trier of fact, is the sole judge of the credibility of witnesses, and
may believe or disbelieve all or any part of a witness’s testimony. Reece v. State, 878
S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1994, no pet.). The State presented
the evidence of Lee and Glover, who both agreed that Lee suffered a severe beating
at appellant’s hands. Glover clearly stated that he saw appellant repeatedly beating
Lee in the garage and that Lee was unable to fight back or to defend himself. The
jury apparently chose to believe Glover and Lee rather than Vincent and Hicks. The
jury is free to believe or disbelieve all or part of a witness’ testimony. Cain v. State,
958 S.W.2d 404, 409 (Tex. Crim. App. 1997). After reviewing all of the evidence
presented, we do not find that the proof of appellant’s guilt is so obviously weak as
to undermine confidence in the jury’s verdict, or that the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See Johnson, 23
S.W.3d at 11. 
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Publish. Tex. R. App. P. 47.2(b).