**Donald SPARKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–03–00761–CR, 01–03–00762–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 27, 2005.

128

Tim Greene, Houston, TX, for Appellant.

Oliver Kitzman, District Attorney of Waller County, Hempstead, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

ELSA ALCALA, Justice.

In separate indictments, appellant, Donald Sparks, was charged with the felony offenses of murder of Deborah Lauren Alexander (Lauren), and aggravated assault of Samuel Keith Thompson (Sammy).[1] Appellant pleaded not guilty to the charges before a single jury, which found him guilty of both offenses. The jury sentenced appellant to 75 years in prison and a $10,000 fine for the murder of Lauren, and 10 years in prison and a $5,000 fine for the aggravated assault of Sammy, and the trial court ordered that the sentences run concurrently.

■ In two issues, appellant contends that the trial court erred by (1) allowing the jury to propound questions to a testifying witness, (2) denying appellant's requested jury charge of defense of property, and (3) denying appellant's requested jury charge of his right to self-defense against both Lauren and Sammy. The State did not file an appellate brief for either conviction. We conclude that the trial court erred by failing to properly instruct the jury on the law of self-defense and defense of property and that appellant was harmed by the error; and thus, we reverse for a new trial on both offenses.[2]

## Background

In 2002, appellant was 70 years of age, retired, and a widower. Lauren and appellant had been friends for three years; they did not have an intimate relationship, although he allowed her to live with him at his trailer house for about a month. On January 4, 2002, both appellant and Lauren smoked crack cocaine during the daytime. That night, appellant gave Lauren a ride to an icehouse after giving her some money. Appellant waited in his parked car while she went into the icehouse. When she returned to appellant's car, her friend, Sammy, joined them. Sammy and appellant had been strangers before that evening.

Lauren, Sammy, and appellant went to various places for short lengths of time of approximately 15 minutes at each location. Ultimately, appellant left Lauren and Sammy at "Scott's" trailer without a ride when appellant departed alone for his house. Sammy and Lauren, however, found a ride to appellant's trailer, which was about eight miles away.

After Sammy and Lauren smoked some crack cocaine, they approached appellant's trailer and were allowed into the trailer by appellant. Appellant said that he had no money to purchase gasoline that night, but that he would cash a check at a bank the next day when the banks opened at 9 a.m., get gasoline, and take Sammy and Lauren to Sammy's residence in Hempstead.

At approximately 3:00 a.m., a man and woman appeared at appellant's trailer house. The woman, an acquaintance of

1. The murder is trial court cause number 02–02–11063, which is appellate cause number 01–03–00761, and the aggravated assault is trial court cause number 02–02–11064, which is appellate cause number 01–03–00762.

2. Because we remand for a new trial, we need not address whether the trial court erred by allowing the jury to propound questions to

a testifying witness; however, we note that in Texas, jurors are not permitted to ask questions of witnesses. *See Allen v. State,* 845 S.W.2d 907, 907 (Tex.Crim.App.1993) ("Allowing juror questioning of witnesses in the criminal setting is, therefore, impermissible, and any excursion into this area is error not subject to harm analysis").

appellant, asked to borrow money from him. Lauren became angry with the woman and argued and fought with her. While holding scissors in her hand, Lauren pulled the woman's hair, but the fight stopped when appellant exhibited a sawed-off .410 shotgun. After the man and woman left appellant's trailer house, Sammy and Lauren slept on opposite sides of appellant's couch, while appellant lay on his bed. From that point on, appellant's and Sammy's versions of the events are starkly different concerning appellant's use of the sawed-off .410 shotgun and a .22 rifle.

### Sammy's Testimony

Sammy testified as follows. Appellant lay on his bed with a .22 rifle next to him as Sammy and Lauren slept on the sofa. When they all rose at about 9:00 a.m., appellant and Lauren started arguing again. Appellant retrieved his .22 rifle, pointed it at Lauren, and ordered her to gather her clothes and leave. As she gathered her belongings, Lauren told appellant that he could not call her names and that she wasn't scared of him or the gun. Appellant shot Lauren in the face with the .22 rifle. Appellant then turned to Sammy and pointed the .22 rifle at him. After Sammy ducked behind a chair, he rushed at appellant and grabbed the end of the .22 rifle's barrel with his left hand, causing the gun to discharge a bullet that struck Sammy's left thumb. Sammy took possession of the .22 rifle. As Sammy tried to unlock the door to leave the trailer, appellant, now armed with a .410 shotgun, shot at Sammy, but missed him. Sammy opened the door and ran outside. Appellant shot at Sammy again with the .410 shotgun, but missed him again. Sammy then heard another muffled gunshot that sounded as if it came from inside the trailer house. Sammy ran to a garden nursery nearby and called for police and an ambulance.

### Appellant's Testimony

Appellant testified as follows. At around 3 a.m., when the woman who had fought with Lauren left his trailer, he asked the woman to call police because "Lauren was just totally out of control, and I . . . was afraid that they was gonna [sic] rob me or kill me." Appellant went to the restroom, and, upon returning to his bedroom, he noticed that his .410 shotgun was missing, which caused him to continue to fear for his life. As Sammy and Lauren slept, appellant sat upright on the bed holding the .22 rifle across his lap throughout the night.

At about 9:00 a.m., when everyone rose, appellant offered to give Lauren a ride to Sammy's house or into town. He told Lauren that she had to get her clothes and leave his trailer because there was a warrant for her arrest. Lauren asked him for $50 so that she could pay Sammy part of the $225 that she owed him, but appellant refused.

Lauren stabbed appellant three times in the arm with a pair of scissors, but appellant "really didn't think Lauren would hurt [him .]" Sammy, who had hidden appellant's .410 shotgun inside his jacket, pulled out the .410 shotgun, pointed it at appellant and said, "I have to have my money cause [sic] my wife will kill me if I don't get it," which caused appellant to fear for his life. In a sudden reverse of emotion, Lauren switched the focus of her aggression to Sammy and attacked him in an attempt to protect appellant.

As Lauren fought Sammy to assist appellant, appellant thought, "[H]e is gonna kill us both." Appellant retrieved his .22 rifle from the bedroom and pointed it at Sammy, who was on top of Lauren, beating her with his hands and with the sawed-off .410 shotgun. After appellant "nudged" Sammy in the side and told him to quit, Sammy "brought up the shotgun,

and turned around real slow" and then grabbed appellant's .22 rifle, which discharged, shooting Lauren. Sammy grabbed appellant, slung him around like a "rag doll," and tried to shoot him with the .22 rifle, but it would not fire. When Sammy pointed the .410 shotgun under appellant's chin, appellant used all of his strength to push the .410 shotgun off, which caused it to fire, shooting Lauren a second time. Sammy threw down the .410 shotgun, picked up the .22 rifle, and ran out the door.

Earlier that evening, appellant had told Sammy that the .410 shotgun was a "single shot shotgun." Appellant stated that he believed that was why Sammy discarded the .410 shotgun before leaving the house. Appellant picked up the .410 shotgun, discarded the empty shell, reloaded a shell, and went outside. When Sammy fell down outside appellant's trailer, appellant shot at him, striking the side of the car that was parked nearby. As he ran from the trailer, Sammy fired the .22 rifle back towards appellant's trailer. Appellant then called police from a nearby neighbor's house.

### Denial of Jury Charges

In his second issue, appellant contends that the trial court erred by denying his requested jury charges. Although appellant requested a defense-of-property jury instruction by submitting proposed written jury instructions, the trial court refused to instruct the jury on that defense. Additionally, the trial court refused to include jury instructions on appellant's right to use self-defense against both Lauren and Sammy for both the murder and the aggravated assault charges. Instead, the trial court instructed the jury, in the application paragraph for the murder charge, that appellant had a right to self-defense as to Lauren only and instructed the jury, in the application paragraph for the aggravated assault charge, that appellant had a right to self-defense as to Sammy only.

By obtaining adverse trial court rulings on his proposed written instructions, appellant preserved error on his complaints concerning the denial of his requested charges. *See* TEX.CODE CRIM. PROC. ANN. Art. 36.14 (Vernon 1999) (defendant must distinctly specify each ground of objection to charge); *see Chapman v. State*, 921 S.W.2d 694, 695 (Tex.Crim.App.1996) (holding that defendant preserves error if request is specific enough to put trial court on notice of omission or error in charge; requested charge need not be "in perfect form," but only sufficient enough to call error to trial court's attention); *see Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim.App.1996) (holding that preservation of error relating to defensive issue in jury charge is made by objection or submission of requested charge to court).

■■■ A trial court must charge the jury on any defensive issue raised by the evidence, "regardless of its substantive character." *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App.1997). A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. *Id.* (quoting *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Crim.App.1982)). The jury alone decides whether to accept or reject a properly raised defensive theory. *See Woodfox v. State*, 742 S.W.2d 408, 410 (Tex.Crim.App.1987) (holding that trial judge who refuses to give instruction on defensive issue because evidence supporting it is weak or unbelievable effectively substitutes his judgment on weight of evidence for that of jury). In determining whether the testimony of the accused rais-

es an issue of self-defense, the truth of the accused's testimony is not at issue. *Rodriquez v. State*, 544 S.W.2d 382, 383 (Tex. Crim.App.1977).

### Defense of Property

■ Our laws provide that a person may use non-deadly force to defend property under certain circumstances. Section 9.41 of the Penal Code states the following:

(a) A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property. (b) A person unlawfully dispossessed of land or tangible, movable property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to reenter the land or recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and; (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or (2) the other accomplished the dispossession by using force, threat, or fraud against the actor.

TEX. PEN.CODE ANN. § 9.41 (Vernon 2004). Our Penal Code further provides that a person is justified in using deadly force to defend property under certain circumstances, as follows:

A person is justified in using deadly force against another to protect land or tangible, movable property: (1) if he would be justified in using force against the other under Section 9.41; and (2) when and to the degree he reasonably believes the force is immediately necessary: (A) to prevent the other's imminent commission of arson, burglary, rob-

bery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or (B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and (3) he reasonably believes that: (A) the land or property cannot be protected or recovered by any other means; or (B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

TEX. PEN.CODE ANN. § 9.42 (Vernon 2004).

According to appellant, Sammy pointed the .410 shotgun at him and demanded his money, which caused him to fear for his life. Appellant testified that, in response to this aggravated robbery, he armed himself with the .22 rifle and struggled with Sammy, who used the sawed-off .410 shotgun to beat Lauren. Appellant further testified that his .22 rifle discharged, when Sammy grabbed it, and shot Lauren. Without regard to its credibility, appellant's testimony was sufficient to raise the issue of his right to use deadly force to defend his property from aggravated robbery by Sammy. The trial court erred, therefore, by denying a defense-of-property instruction concerning appellant's right to use deadly force to defend his property from Sammy for both the murder and aggravated assault offenses, and we sustain that portion of appellant's complaint on appeal.

■ Although, according to appellant's testimony, Lauren had previously stabbed appellant after he refused to give her more money, appellant clearly stated that, when he armed himself with the .22 rifle that morning when Lauren was shot, Lauren was in the course of defending appellant from Sammy's threats with the .410 shot-

gun, and he "really didn't think Lauren would hurt [appellant.]" The trial court did not err, therefore, by denying the defense-of-property instruction concerning Lauren, who, by appellant's own testimony was assisting him and not attacking or robbing him when appellant acted to defend his property. We overrule the portion of appellant's complaint on appeal concerning denial of his request for a defense-of-property instruction concerning Lauren.

### Self–Defense

■ Our Penal Code provides that a person may use non-deadly force in self-defense under certain circumstances, as follows:

Except as provided in Subsection (b),[3] a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

Tex. Pen.Code Ann. § 9.31(a) (Vernon 2004). However, to be justified in using self-defense through the use of deadly force, our Penal Code provides:

A person is justified in using deadly force against another: (1) if he would be justified in using force against the other under Section 9.31; (2) if a reasonable person in the actor's situation would not have retreated; and (3) when and to the degree he reasonably believes the deadly force is necessary: (A) to protect himself against the other's use or attempted use of unlawful deadly force; or (B) to prevent the other's imminent

commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

Tex. Pen.Code Ann. § 9.32(a) (Vernon 2004).

Although appellant testified that he had feared for his life as to Lauren the night before she was killed, and that Lauren had stabbed him earlier that morning after he refused to give her more money, he also clearly stated that, when he armed himself with the .22 rifle on the morning that Lauren was shot, Lauren was in the course of defending appellant from Sammy's threats with the .410 shotgun, and appellant "really didn't think Lauren would hurt [him.]" The trial court did not err, therefore, by refusing to instruct the jury on appellant's right to self-defense as to Lauren on the aggravated assault charge,[4] and we overrule that portion of appellant's complaint on appeal.

■ According to his own testimony, appellant armed himself when Sammy pointed the .410 shotgun at him and demanded his money, which caused appellant to fear for his life. As Sammy beat Lauren with his hands and the .410 shotgun, appellant "nudged" Sammy in the side and told Sammy to quit. Appellant's .22 rifle discharged and shot Lauren when Sammy grabbed at the .22 rifle. This testimony is sufficient to raise the issue of appellant's right to use deadly force in self-defense against Sammy for both the murder charge and the aggravated assault charge.[5]

---

**3.** Section 9.31(b) pertains to instances when the use of force is not permitted, such as in response to verbal provocation alone. *See* Tex. Pen.Code Ann. § 9.32(b) (Vernon 2004).

**4.** It also appears that the trial court erred by including appellant's right to use self-defense against Lauren as to the murder charge, but that issue is not before us in this appeal.

**5.** Section 9.05 of the Texas Penal Code allows a jury to convict the defendant even if he was justified in his use of self-defense when he recklessly injures or kills an innocent third person. *See* Tex. Pen.Code Ann. § 9.05 (Vernon 2004) (stating "Even though an actor is justified under this chapter in threatening or using force or deadly force against another, if

We conclude that the trial court erred by failing to submit an instruction on self-defense as to Sammy for the murder charge and sustain that portion of appellant's issue on appeal. Because the aggravated assault offense charge contained an application paragraph concerning appellant's right to use self-defense against Sammy, no error concerning the self-defense instruction occurred in that charge.

## Harm Analysis

■ Having concluded that the trial court erred by failing to instruct the jury on appellant's right to use deadly force to defend his property as to Sammy for both the murder and the aggravated assault offenses, and by failing to instruct the jury on appellant's right to use deadly force in self-defense as to Sammy for the murder offense, we must determine whether the error harmed appellant. *See Payne v. State,* 11 S.W.3d 231, 232 (Tex.Crim.App. 2000); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Because appellant properly preserved the error by objecting to the charge and by submitting his proposed jury instructions, we must reverse the conviction and order a new trial if appellant suffered any actual harm, regardless of degree. *See Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996) (citing *Almanza,* 686 S.W.2d at 171). To determine if there is any harm, we must weigh the degree of harm in light of the entire jury charge, state of the evidence, counsel's arguments, and any other relevant information revealed by the trial rec-

ord as a whole. *See Almanza,* 686 S.W.2d at 171.

### 1. The Jury Charge

We begin our harm analysis by analyzing the jury charge itself. *See id.* Although the jury charge for the murder offense contained the law concerning self-defense generally, the application paragraph of the charge limited appellant's right to self-defense as against Lauren only—who, by appellant's admission, was coming to his aid when appellant armed himself. Appellant thus received no charge on his right to use self-defense against the only attacker, Sammy.

■ In assessing whether appellant was harmed by the erroneous jury charge, we also consider the appellate presumption that the jury is presumed to have understood and followed the court's charge, unless there is evidence to the contrary. *See Hutch,* 922 S.W.2d at 172. Under this presumption, we must presume that the jury followed the erroneous instruction in the murder charge, which authorized the jury to take Lauren's, but not Sammy's, actions into account. *See id.* Moreover, the erroneous murder charge was contained in the application paragraph, the portion of the charge that authorizes the jury to act. *See id.* It is not sufficient for the jury to receive an abstract instruction on the law. *Id.* An abstract charge does not inform the jury of what facts, if found by it, would permit the jury's consideration of the contested evidence. *Id.* at 173. Nothing in

in doing so he also recklessly injures or kills an innocent third person, the justification afforded by this chapter is unavailable in a prosecution for the reckless injury or killing of the innocent third person."); *see Banks v. State,* 955 S.W.2d 116, 119 (Tex.App.-Fort Worth 1997, no pet.); *Brunson v. State,* 764 S.W.2d 888, 891 (Tex.App.-Austin 1989, pet. ref'd). When the evidence raises the issue whether an innocent third person was killed

recklessly during a defendant's use of self-defense, the trial court must first charge the jury on the law of appellant's right to self-defense and then further charge the jury on the section 9.05 limitation concerning reckless injury or death of an innocent third person. *See In the Matter of D.L.,* 656 S.W.2d 181, 183 (Tex.App.-San Antonio 1983, no pet.) (Butts, J. concurring).

the record suggests that the jury did not understand or follow the court's charge, and we must presume that it is possible that appellant was convicted by a jury that may have wanted to, but was not allowed to, take into account Sammy's actions when considering appellant's self-defense claim to the murder charge. *See id.* at 172.

Furthermore, both the murder and aggravated assault charges completely exclude any defense-of-property instruction. Thus, both charges ignore appellant's right to assert his defense that Sammy unlawfully attempted to take appellant's property at gunpoint.

 Once a defendant has produced sufficient evidence to raise a defense, the State is required to disprove the defense beyond a reasonable doubt. *Boget v. State,* 40 S.W.3d 624, 626 (Tex.App.-San Antonio 2001), *aff'd,* 74 S.W.3d 23 (Tex. Crim.App.2002). The State was not required here to disprove the defense-of-property defense beyond a reasonable doubt because the jury charges did not instruct the jurors that the State had the burden of persuasion on the issue. Even if the jury had a reasonable doubt about whether appellant was justified in using deadly force to defend his property from Sammy, the charge did not allow the jury to acquit on that basis.

### 2. The Evidence

We examine next the state of the evidence, including contested issues and the weight of the probative evidence. *See Almanza,* 686 S.W.2d at 171. The jury heard two eyewitness accounts of the events. In Sammy's version, appellant was the aggressor. In appellant's version, Sammy was the aggressor. The evidence from the autopsy report stated that Lauren's cause of death was a "gunshot wound and shotgun wound to the head." Because the medical examiner testified that there was no way to know which wound Lauren

received first, the physical evidence could be consistent with either appellant's or Sammy's version of events, depending on whom the jury believed. The deputy sheriff for the Waller County Sheriff's Department testified that he overheard appellant state that "two people had tried to rob him, that he had shot one, and had killed the girl in his house." The Sheriff's testimony is generally consistent with appellant's trial testimony.

### 3. Counsel's Argument

We next examine the arguments of counsel. *See id.* It is clear from the record that appellant's entire defense was that he was acting to defend himself from the use of deadly force by Sammy. Appellant's counsel referred to self-defense and defense-of-property during voir dire, and argued these defenses in his opening statement, in his closing arguments, and by eliciting testimony from appellant. In his closing arguments to the jury, the prosecutor also repeatedly referred to appellant's claims of self-defense and defense-of-property in response to a threatened robbery by Sammy.

### 4. Other Relevant Information

 Lastly, we address any other relevant information revealed by the record of the trial as a whole. *See id.* The record contains no information on the jury's deliberation or length of time of their deliberation. The record reveals no other relevant information to assist us concerning our harm analysis.

The trial court's refusal to instruct the jury on appellant's right to assert defense-of-property as to Sammy on both the murder and aggravated assault offenses, and appellant's right to self-defense from Sammy as to the murder offense harmed appellant because the trial court's refusals denied appellant the opportunity of requir-

ing the jury to find against these defenses before assessing his guilt for the charged offenses. The jury here was not instructed on justifications that would have required acquittal if the jury resolved these factual issues in appellant's favor. *See Boget*, 40 S.W.3d at 627. We conclude that the error in the denial of these jury instructions actually harmed appellant. We sustain appellant's second issue.

## Conclusion

The judgments of the trial court are reversed, and we remand for a new trial.