Opinion issued March 5, 2009









Opinion issued March 5,
2009

 

 

 

 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO.   01-08-00441-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JAMES ROOSEVELT RUE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from the 10th District Court

Galveston County, Texas

Trial Court Cause No. 06CR0286 

 



O P I N I O N

          Following trial, a jury
convicted James Roosevelt Rue of aggravated assault and assessed his punishment
at ten years’ imprisonment.  Rue contends that the judgment should be reversed
because the trial court erred in (1) refusing to instruct the jury on the
defense of deadly force to prevent aggravated kidnapping; and (2) denying Rue’s
request to impeach the complainant with a prior conviction for attempted
endangerment of a child.  Concluding that the trial court’s denial of Rue’s
requested instruction caused harmful error, we reverse the judgment and remand
the cause for a new trial.

Background

Rue’s conviction resulted
from an altercation concerning the proper transfer of physical custody of his
then-six-year-old daughter, J., to her mother, Latoshua Praylor, and Praylor’s
boyfriend, Gerald Chaney.  While J. was staying with Rue during the 2005
holiday season, J. called Praylor on December 26 and asked to be picked up. 
When Praylor arrived, Rue refused to let J. go home with her.  Later that
evening, Praylor returned with a Texas City police officer, but Rue again
refused to let J. leave with Praylor.

The next morning, Praylor
sought assistance from the constable’s office.  The constable telephoned Rue
and informed him that he would pick up J. between 5:00 and 6:00 P.M. that
evening and take her to Praylor.  

Praylor, however, did not
wait until the evening.  Instead, without the constable’s knowledge, she
enlisted two deputy constables to accompany her to Rue’s home later that
morning.  The deputies went inside and spoke to Rue, but emerged without J.  

Praylor returned home and
told Chaney about what had happened as she prepared to go to work, and asked
him if he would drive her to work.  On the way there, Praylor asked Chaney to
stop by Rue’s house to pick up J. 

When Praylor and Chaney
arrived at Rue’s house, they found Rue sitting outside watching J. and another
of Rue’s daughters ride bicycles.  Praylor informed Rue that she was taking J.
and started to walk toward J.  When Rue began to follow Praylor, Chaney
intercepted Rue, put his hands around Rue’s neck, and told him to let Praylor
take J.  Rue pushed Chaney in response, then ran into the house.  Praylor, J.,
and Chaney ran to the truck.  Chaney had opened the door to the truck when he
saw Rue emerge from the house holding a black gun.  Rue ran toward the truck,
shooting.  Rue discharged the weapon four times, striking Chaney twice.  Chaney
drove to the end of the street, where he saw Officer R. Hall in his patrol car,
and asked him for assistance.  

Rue walked up to Praylor,
and demanded that she put J. down.  Praylor complied, then ran down the street
toward Chaney’s truck.  Praylor left to take Chaney to the hospital as Officer
Hall headed toward Rue’s house.    




Hall detained Rue, who by
then was unarmed.  Rue consented to a search of his bedroom, where detectives
recovered his gun.  Rue was arrested and charged with aggravated assault with a
deadly weapon.  

After the close of
evidence, the court held a jury charge conference with the parties.  Rue
requested that the jury be instructed on various defensive issues, including a
proposed instruction that 

if
you believe from the evidence beyond a reasonable doubt that on the occasion in
question the defendant James Rue, did shoot Gerald Chaney with a gun, as
alleged in the indictment, but you further believe from the evidence, or if you
have a reasonable doubt thereof, that at the time she [sic] did so, the
defendant reasonably believed that [] Gerald Chaney was then and there
committing or attempting to commit a[n] aggravated kidnapping upon him, and he
shot him to prevent the apparent commission of such aggravated kidnapping, and
that a person in defendant’s situation would not have stopped, then you will
find the defendant not guilty.

The trial court denied this
instruction, but agreed to include instructions to the jury on the law of
self-defense.  The jury rejected those defensive issues and found Rue guilty of
aggravated assault as alleged in the indictment. 

Discussion

In his first issue, Rue
contends that the trial court erred in refusing to instruct the jury on the
defense of deadly force to prevent an aggravated kidnapping.  The record
contains the following exchange concerning the defense’s tendered instruction:

DEFENSE
COUNSEL:   Moving on to the next one, deadly force to prevent—well, 12.360.210.[1] 
Deadly force to prevent what would be listed as sexual assault, not applicable
in this case, obviously, but we would request an instruction of deadly force to
prevent aggravated kidnapping. . . .

THE
COURT:       Sexual assault, but you are talking about this is aggravated
kidnapping.

THE
STATE:        I would suggest there is no evidence of aggravated kidnapping in
this case.

THE
COURT:       I believe the State is correct on that one, . . . I will deny
that, too.

Preservation of
error

We first consider the
State’s assertion that Rue failed to preserve this issue because the tendered
language asked whether Rue understood that Chaney was committing or attempting
to commit an aggravated kidnapping “upon him”—meaning Rue himself—instead of
“upon J.”  Upon a timely request, the trial court is required to instruct the
jury on any defensive issue raised by the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).  An imperfect
objection is sufficient to preserve error “if the record indicate[s] that the
trial judge understood appellant’s request to encompass the matters about which
appellant now complains.”  Bennett v. State, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007).  The defendant need not invoke any “magic words” in the jury charge
request, as long as it is enough to bring the issue to the court’s attention.  Id.; Chapman v. State, 921 S.W.2d 694, 695 (Tex. Crim. App. 1996).  

Rue maintains that his
request, viewed in this context, is reasonably understood as seeking a
defensive instruction concerning his use of deadly force in response to the
possible aggravated kidnapping of J., because “the evidence was undisputed that
Chaney and Praylor were abducting [J.] rather than appellant.”  Our review of
the record reveals that the trial court denied the requested instruction on the
basis that there was no evidence of aggravated kidnapping, not because Rue
requested an instruction using the wrong victim of an aggravated kidnapping. 
Rue claimed at trial that he was a victim of Chaney’s assaultive conduct in the
course of taking J., and that he was in fear that Chaney was getting a gun he
was known to carry in his truck.  We therefore hold that Rue preserved this
issue for appellate review.

Error analysis

In addressing the merits
of Rue’s complaint, we review the record to determine if it raises the issue of
whether, at the time of the incident, Rue could have reasonably believed that
the use of deadly force was immediately necessary to prevent the aggravated
kidnapping of J.  A defendant is entitled to a jury instruction on every
defensive issue raised by the evidence regardless of the strength of that evidence. 
Brown v. State, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997); Golden v.
State, 851 S.W.2d 291, 295 (Tex. Crim. App. 1993); Sparks v.
State, 177 S.W.3d 127, 131 (Tex. App.—Houston [1st Dist.] 2005, no pet.)
(holding that defendant is entitled to affirmative defensive instruction on
every issue raised by evidence, including defendant’s testimony, regardless of
whether it is strong, feeble, unimpeached, or contradicted, and even if trial
court opines that testimony is not entitled t o belief).

Under Texas law, a person
commits aggravated kidnapping “if the person intentionally or knowingly abducts
another person and uses or exhibits a deadly weapon during the commission of
the offense.”  Tex. Penal Code Ann. §
20.04(b) (Vernon 2003).   Under the statute, 

“[a]bduct” means to restrain a person with intent to
prevent his liberation by:

 

  (A) secreting or holding him in a place where he is
not likely to be found; or

 

  (B)  using or threatening to use deadly force.

 

Tex.
Penal Code Ann. § 20.01(2)
(Vernon 2003).  “Restrain,” in turn, 

means to restrict a person’s movements without
consent, so as to interfere substantially with the person’s liberty, by moving
the person from one place to another or by confining the person.  Restraint is
“without consent” if it is accomplished by:

 

  (A)  force, intimidation, or deception; or

 

  (B)  any means, including acquiescence of the
victim, if:

 

          (i) the victim is a child who is 14 years of
age . . . and the parent . . . has not acquiesced in the movement or
confinement . . . .

 

Tex. Penal
Code Ann. § 20.01(1)
(Vernon 2003).  The issue is whether Rue could have reasonably regarded the
conduct of Praylor and Chaney as aggravated kidnapping using deadly force. The
undisputed evidence shows that Praylor, J.’s mother, instigated an effort to
remove J. from Rue’s custody to her custody with Chaney, preventing a showing
under subsection 20.01(1)(B)(i).[2] 
Accordingly, we consider whether, under the evidence, Rue could have reasonably
understood Praylor and Chaney’s activities as restraining J. by force,
intimidation, or deception.[3]

The record contains
evidence that, before the incident, Rue was not aware that J. called Praylor
and asked to be picked up.  After Praylor was turned away from Rue’s house
following her first attempt to pick up J., she spoke on the telephone with J.,
then with Rue, but when she began arguing with Rue about his refusal to allow
J. to go home with her, Rue hung up on Praylor.  Once more that evening and
twice the following morning, Praylor sought the assistance of law enforcement
authorities to help her take J. from Rue.  Each time, Rue cooperated with the
officers and informed them that he planned to return J. to her mother’s home
the evening of December 27, after which the officers advised Praylor to wait
for Rue to return J. at that time.  Each time, Rue thought the matter had been
resolved, but when Praylor persisted in trying to retrieve J. against the
officers’ advice, Rue became concerned that the matter had gotten “blown out of
proportion” because he had hung up the phone on Praylor.  

According to Rue’s
testimony, when Chaney parked in front of Rue’s house, he suspected that,
because Praylor did not get the result she wanted from the authorities, she and
Chaney had taken the matter into their own hands.  Rue saw Praylor and Chaney
head from the truck toward J.  When Rue tried to move the children out of the
way, Chaney grabbed him in a chokehold and, according to Rue’s testimony, put a
knife on him.  Praylor hit Rue in the face twice while he was being held by
Chaney, then grabbed J.  Rue broke away and ran to retrieve his gun, concerned
for the safety of his children.  He returned outside quickly to see Chaney
reaching for the door of his truck.  

Before the incident, Rue
was told by a mutual friend, who was a neighbor of Chaney, that Chaney kept a
gun in his car.  Rue testified that, based on that knowledge, he thought that
Chaney could be reaching into his truck for his gun to “come back and do
something to [Rue],” so Rue began shooting at Chaney.

This evidence raises the
issue of whether Rue was justified in using deadly force to prevent an
aggravated kidnapping.  Accordingly, we hold that the trial court erred in
refusing to provide this requested defensive instruction to the jury. 

Harm analysis

We next consider whether
the error requires reversal.  Error that was called to the court’s attention
will lead to reversal if there was some harm to the appellant, regardless of
degree.  Flores v. State, 224 S.W.3d 212, 213 (Tex. Crim. App. 2007)
(citing Tex. R. Crim. Proc. Ann.
art. 36.19 (Vernon 2006)); Sparks, 177 S.W.3d at 134.  In assessing
whether appellant was harmed by the erroneous jury charge, we look to the
charge, the evidence, and the argument of counsel.

          Jury charge

We examine the charge
under the presumption that, absent evidence to the contrary, the jury understood
and followed the court’s charge.  Sparks, 177 S.W.3d at 134.  Here, the
charge authorized the jury to consider whether Rue was justified in using
deadly force in self-defense, but also instructed that the defendant must
retreat if a reasonable person would have done so under the circumstances.  Had
the court instructed the jury on Rue’s right to use deadly force to prevent
aggravated kidnapping, in contrast, the jury would also have been instructed
that the defendant was not required to retreat and that it could not consider
the defendant’s failure to retreat in determining whether he reasonably
believed that the use of deadly force was necessary.  See Tex. Penal Code Ann. § 9.32(c), (d) (Vernon Supp. 2008); Hughes v. State, 719 S.W.2d 560, 564–65 (Tex. Crim. App. 1986). 


          Evidence

The witnesses, including
Rue himself, consistently testified that after Rue was released from Chaney’s
chokehold, Rue headed into his house, returned with a gun, and began shooting
at Chaney.  The issue of whether Rue was justified in returning after he had
already retreated thus was squarely before the jury.

          Argument of
counsel

During closing argument,
the State focused on the fact that Rue came back outside of the house, telling
the jury

Did he have to come back out?  Would a reasonable
person have come back out?  I submit to you, no.  He did not act as a
reasonable person would have.  There was no threat.  Now, he claims, “I don’t
know where Gerald Chaney was at that time.  All I wanted to do is protect my
family, protect my home, and I was in fear for my life.”

* * *

Where is the threat?  At that point in time the
Defendant saw there was no threat.  

* * *

There was no threat to the Defendant at that point in
time.  That’s the point in time you will look at if you are going to give this
man a self-defense claim. . . .

* * *

The Defendant has a duty to retreat.  Before he makes
the decision as a human being that can take another human being’s life, you
have to make the analysis in your head before you do whether it’s safe for you
to get away from the situation.  The law states that you have a duty to
retreat.

The State’s closing argument
emphasized the fact that Rue returned to the scene after retreating, and
focused on the self-defense instruction that he had no right to do so.  The
jury charge, the facts, and the argument of counsel prevented the jury from
considering the issue of whether Rue was justified in coming out of the
house—an issue that is pivotal to Rue’s defensive theory.  We therefore hold
that the charge error caused harm and requires reversal of his conviction.

Conclusion

We hold that the trial
court erred in refusing to submit a defensive instruction on the use of deadly
force to prevent aggravated kidnapping accomplished by force.  We therefore
reverse the judgment of the trial court and remand the cause for a new trial.

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Judges Taft, Bland,
and Sharp.

Publish.  Tex. R. App. P. 47.2(b).

 

 









[1]
Defense counsel’s numerical reference is to a
pattern jury charge.  See  Hons.
Elizabeth Berry & George Gallagher, I Texas Criminal Jury Charges
§ 3:1930 (Paul J. McClung former ed.).





[2]
The aggravated kidnapping statute makes no
distinction about whether the “parent” referred to in subsection 20.01(1)(B)(i)
has current legal custody over the child.  The Legislature made compliance with
a child custody order relevant under section 25.03 of the Penal Code, which
makes interference with child custody a state jail felony, but the aggravated
kidnapping statute does not contain any comparable restriction.  Compare
Tex. Penal Code Ann. § 25.03(a) (Vernon
Supp. 2008) (person commits offense of interference with child custody by
violating express terms of custody order, taking child out of judicial district
without having been awarded custody and with intent to deprive court of
jurisdiction over child, or noncustodial parent who intentionally interferes
with lawful custody by knowingly enticing or persuading child to leave custody
of custodial parent) with Tex.
Penal Code Ann. § 20.04 (Vernon 2003) (offense of aggravated kidnapping
requires intentional or knowing abduction) and Tex. Penal Code Ann. § 20.01(1) & (2) (Vernon 2003) (defining
abduction as requiring restraint, and restraint as possible only when parent
“has not acquiesced in the movement or confinement” of child).  We also observe
that, at the time of the incident, the child custody order in effect between
Rue and Praylor entitled Rue to possession of J. during the school holiday. 
The terms and conditions, however, included a restriction that Rue exercise
“all periods of possession” under the order “at the residence of [his] mother,
Juanita Woodfox, and under her supervision.”  Rue had J. at his house, not his
mother’s, and the record does not mention whether Woodfox was present.  The
record does not provide grounds to determine which parent had a greater right
of possession.

 





[3]
Under the kidnapping statute, it is an
affirmative defense that, among other things, the actor was a relative of the
person abducted.  See Tex. Penal
Code Ann. § 20.03(b)(2) (Vernon 2003).  The definition of relative
includes a parent.  Id. § 20.01(3).  However, this affirmative
defense is not permitted for aggravated kidnapping.  See id.
§ 20.04.