**James Roosevelt RUE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–08–00441–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 5, 2009.

Discretionary Review Refused
Aug. 19, 2009.

Randy Schaffer, The Schaffer Firm, Houston, TX, for Appellant.

Kurt Sistrunk, Criminal District Attorney, Galveston County, Galveston, TX, for Appellee.

Panel consists of Judges TAFT, BLAND, and SHARP.

## OPINION

JANE BLAND, Justice.

Following trial, a jury convicted James Roosevelt Rue of aggravated assault and assessed his punishment at ten years' imprisonment. Rue contends that the judgment should be reversed because the trial court erred in (1) refusing to instruct the jury on the defense of deadly force to prevent aggravated kidnapping; and (2) denying Rue's request to impeach the complainant with a prior conviction for attempted endangerment of a child. Concluding that the trial court's denial of Rue's requested instruction caused harmful error, we reverse the judgment and remand the cause for a new trial.

### Background

Rue's conviction resulted from an altercation concerning the proper transfer of physical custody of his then-six-year-old daughter, J., to her mother, Latoshua Praylor, and Praylor's boyfriend, Gerald

Chaney. While J. was staying with Rue during the 2005 holiday season, J. called Praylor on December 26 and asked to be picked up. When Praylor arrived, Rue refused to let J. go home with her. Later that evening, Praylor returned with a Texas City police officer, but Rue again refused to let J. leave with Praylor.

The next morning, Praylor sought assistance from the constable's office. The constable telephoned Rue and informed him that he would pick up J. between 5:00 and 6:00 P.M. that evening and take her to Praylor.

Praylor, however, did not wait until the evening. Instead, without the constable's knowledge, she enlisted two deputy constables to accompany her to Rue's home later that morning. The deputies went inside and spoke to Rue, but emerged without J.

Praylor returned home and told Chaney about what had happened as she prepared to go to work, and asked him if he would drive her to work. On the way there, Praylor asked Chaney to stop by Rue's house to pick up J.

When Praylor and Chaney arrived at Rue's house, they found Rue sitting outside watching J. and another of Rue's daughters ride bicycles. Praylor informed Rue that she was taking J. and started to walk toward J. When Rue began to follow Praylor, Chaney intercepted Rue, put his hands around Rue's neck, and told him to let Praylor take J. Rue pushed Chaney in response, then ran into the house. Praylor, J., and Chaney ran to the truck. Chaney had opened the door to the truck when he saw Rue emerge from the house holding a black gun. Rue ran toward the truck, shooting. Rue discharged the weapon four times, striking Chaney twice. Chaney drove to the end of the street, where he saw Officer R. Hall in his patrol car, and asked him for assistance.

Rue walked up to Praylor, and demanded that she put J. down. Praylor complied, then ran down the street toward Chaney's truck. Praylor left to take Chaney to the hospital as Officer Hall headed toward Rue's house.

Hall detained Rue, who by then was unarmed. Rue consented to a search of his bedroom, where detectives recovered his gun. Rue was arrested and charged with aggravated assault with a deadly weapon.

After the close of evidence, the court held a jury charge conference with the parties. Rue requested that the jury be instructed on various defensive issues, including a proposed instruction that

if you believe from the evidence beyond a reasonable doubt that on the occasion in question the defendant James Rue, did shoot Gerald Chaney with a gun, as alleged in the indictment, but you further believe from the evidence, or if you have a reasonable doubt thereof, that at the time she [sic] did so, the defendant reasonably believed that [ ] Gerald Chaney was then and there committing or attempting to commit a[n] aggravated kidnapping upon him, and he shot him to prevent the apparent commission of such aggravated kidnapping, and that a person in defendant's situation would not have stopped, then you will find the defendant not guilty.

The trial court denied this instruction, but agreed to include instructions to the jury on the law of self-defense. The jury rejected those defensive issues and found Rue guilty of aggravated assault as alleged in the indictment.

### Discussion

In his first issue, Rue contends that the trial court erred in refusing to instruct the jury on the defense of deadly force to prevent an aggravated kidnapping. The

record contains the following exchange concerning the defense's tendered instruction:

> DEFENSE COUNSEL: Moving on to the next one, deadly force to prevent—well, 12.360.210.[1] Deadly force to prevent what would be listed as sexual assault, not applicable in this case, obviously, but we would request an instruction of deadly force to prevent aggravated kidnapping. . . .
>
> THE COURT: Sexual assault, but you are talking about this is aggravated kidnapping.
>
> THE STATE: I would suggest there is no evidence of aggravated kidnapping in this case.
>
> THE COURT: I believe the State is correct on that one, . . . I will deny that, too.

### Preservation of error

 We first consider the State's assertion that Rue failed to preserve this issue because the tendered language asked whether Rue understood that Chaney was committing or attempting to commit an aggravated kidnapping "upon him"—meaning Rue himself—instead of "upon J." Upon a timely request, the trial court is required to instruct the jury on any defensive issue raised by the evidence. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007). An imperfect objection is sufficient to preserve error "if the record indicate[s] that the trial judge understood appellant's request to encompass the matters about which appellant now complains." *Bennett v. State*, 235 S.W.3d 241, 243 (Tex.Crim. App.2007). The defendant need not invoke any "magic words" in the jury charge request, as long as it is enough to bring the issue to the court's attention. *Id.; Chap-*

*man v. State*, 921 S.W.2d 694, 695 (Tex. Crim.App.1996).

Rue maintains that his request, viewed in this context, is reasonably understood as seeking a defensive instruction concerning his use of deadly force in response to the possible aggravated kidnapping of J., because "the evidence was undisputed that Chaney and Praylor were abducting [J.] rather than appellant." Our review of the record reveals that the trial court denied the requested instruction on the basis that there was no evidence of aggravated kidnapping, not because Rue requested an instruction using the wrong victim of an aggravated kidnapping. Rue claimed at trial that he was a victim of Chaney's assaultive conduct in the course of taking J., and that he was in fear that Chaney was getting a gun he was known to carry in his truck. We therefore hold that Rue preserved this issue for appellate review.

### Error analysis

 In addressing the merits of Rue's complaint, we review the record to determine if it raises the issue of whether, at the time of the incident, Rue could have reasonably believed that the use of deadly force was immediately necessary to prevent the aggravated kidnapping of J. A defendant is entitled to a jury instruction on every defensive issue raised by the evidence regardless of the strength of that evidence. *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App.1997); *Golden v. State*, 851 S.W.2d 291, 295 (Tex.Crim.App.1993); *Sparks v. State*, 177 S.W.3d 127, 131 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (holding that defendant is entitled to affirmative defensive instruction on every issue raised by evidence, including defendant's testimony, regardless of whether it is

---

1. Defense counsel's numerical reference is to a pattern jury charge. *See* HONS. ELIZABETH BERRY & GEORGE GALLAGHER, I TEXAS CRIMINAL JURY CHARGES § 3:1930 (Paul J. McClung former ed.).

strong, feeble, unimpeached, or contradicted, and even if trial court opines that testimony is not entitled to belief).

Under Texas law, a person commits aggravated kidnapping "if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense." TEX. PENAL CODE ANN. § 20.04(b) (Vernon 2003). Under the statute,

"[a]bduct" means to restrain a person with intent to prevent his liberation by:

(A) secreting or holding him in a place where he is not likely to be found; or

(B) using or threatening to use deadly force.

TEX. PENAL CODE ANN. § 20.01(2) (Vernon 2003). "Restrain," in turn,

means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Restraint is "without consent" if it is accomplished by:

(A) force, intimidation, or deception; or

(B) any means, including acquiescence of the victim, if:

(i) the victim is a child who is 14 years of age . . . and the parent . . . has not acquiesced in the movement or confinement. . . .

TEX. PENAL CODE ANN. § 20.01(1) (Vernon 2003). The issue is whether Rue could have reasonably regarded the conduct of Praylor and Chaney as aggravated kidnapping using deadly force. The undisputed evidence shows that Praylor, J.'s mother, instigated an effort to remove J. from Rue's custody to her custody with Chaney, preventing a showing under subsection 20.01(1)(B)(i).[2] Accordingly, we consider whether, under the evidence, Rue could have reasonably understood Praylor and Chaney's activities as restraining J. by force, intimidation, or deception.[3]

The record contains evidence that, before the incident, Rue was not aware that

**2.** The aggravated kidnapping statute makes no distinction about whether the "parent" referred to in subsection 20.01(1)(B)(i) has current legal custody over the child. The Legislature made compliance with a child custody order relevant under section 25.03 of the Penal Code, which makes interference with child custody a state jail felony, but the aggravated kidnapping statute does not contain any comparable restriction. *Compare* TEX. PENAL CODE ANN. § 25.03(a) (Vernon Supp. 2008) (person commits offense of interference with child custody by violating express terms of custody order, taking child out of judicial district without having been awarded custody and with intent to deprive court of jurisdiction over child, or noncustodial parent who intentionally interferes with lawful custody by knowingly enticing or persuading child to leave custody of custodial parent) *with* TEX. PENAL CODE ANN. § 20.04 (Vernon 2003) (offense of aggravated kidnapping requires intentional or knowing abduction) *and* TEX. PENAL CODE ANN. § 20.01(1) & (2) (Vernon 2003) (defining abduction as requiring restraint,

and restraint as possible only when parent "has not acquiesced in the movement or confinement" of child). We also observe that, at the time of the incident, the child custody order in effect between Rue and Praylor entitled Rue to possession of J. during the school holiday. The terms and conditions, however, included a restriction that Rue exercise "all periods of possession" under the order "at the residence of [his] mother, Juanita Woodfox, and under her supervision." Rue had J. at his house, not his mother's, and the record does not mention whether Woodfox was present. The record does not provide grounds to determine which parent had a greater right of possession.

**3.** Under the kidnapping statute, it is an affirmative defense that, among other things, the actor was a relative of the person abducted. *See* TEX. PENAL CODE ANN. § 20.03(b)(2) (Vernon 2003). The definition of relative includes a parent. *Id.* § 20.01(3). However, this affirmative defense is not permitted for aggravated kidnapping. *See id.* § 20.04.

J. called Praylor and asked to be picked up. After Praylor was turned away from Rue's house following her first attempt to pick up J., she spoke on the telephone with J., then with Rue, but when she began arguing with Rue about his refusal to allow J. to go home with her, Rue hung up on Praylor. Once more that evening and twice the following morning, Praylor sought the assistance of law enforcement authorities to help her take J. from Rue. Each time, Rue cooperated with the officers and informed them that he planned to return J. to her mother's home the evening of December 27, after which the officers advised Praylor to wait for Rue to return J. at that time. Each time, Rue thought the matter had been resolved, but when Praylor persisted in trying to retrieve J. against the officers' advice, Rue became concerned that the matter had gotten "blown out of proportion" because he had hung up the phone on Praylor.

According to Rue's testimony, when Chaney parked in front of Rue's house, he suspected that, because Praylor did not get the result she wanted from the authorities, she and Chaney had taken the matter into their own hands. Rue saw Praylor and Chaney head from the truck toward J. When Rue tried to move the children out of the way, Chaney grabbed him in a chokehold and, according to Rue's testimony, put a knife on him. Praylor hit Rue in the face twice while he was being held by Chaney, then grabbed J. Rue broke away and ran to retrieve his gun, concerned for the safety of his children. He returned outside quickly to see Chaney reaching for the door of his truck.

Before the incident, Rue was told by a mutual friend, who was a neighbor of Chaney, that Chaney kept a gun in his car. Rue testified that, based on that knowledge, he thought that Chaney could be reaching into his truck for his gun to

"come back and do something to [Rue]," so Rue began shooting at Chaney.

This evidence raises the issue of whether Rue was justified in using deadly force to prevent an aggravated kidnapping. Accordingly, we hold that the trial court erred in refusing to provide this requested defensive instruction to the jury.

### Harm analysis

■■■ We next consider whether the error requires reversal. Error that was called to the court's attention will lead to reversal if there was some harm to the appellant, regardless of degree. *Flores v. State*, 224 S.W.3d 212, 213 (Tex.Crim.App. 2007) (citing Tex.R.Crim. Proc. Ann. art. 36.19 (Vernon 2006)); *Sparks*, 177 S.W.3d at 134. In assessing whether appellant was harmed by the erroneous jury charge, we look to the charge, the evidence, and the argument of counsel.

#### Jury charge

■■ We examine the charge under the presumption that, absent evidence to the contrary, the jury understood and followed the court's charge. *Sparks*, 177 S.W.3d at 134. Here, the charge authorized the jury to consider whether Rue was justified in using deadly force in self-defense, but also instructed that the defendant must retreat if a reasonable person would have done so under the circumstances. Had the court instructed the jury on Rue's right to use deadly force to prevent aggravated kidnapping, in contrast, the jury would also have been instructed that the defendant was not required to retreat and that it could not consider the defendant's failure to retreat in determining whether he reasonably believed that the use of deadly force was necessary. *See* Tex. Penal Code Ann. § 9.32(c), (d) (Vernon Supp.2008); *Hughes v. State*, 719 S.W.2d 560, 564–65 (Tex. Crim.App.1986).

### Evidence

The witnesses, including Rue himself, consistently testified that after Rue was released from Chaney's chokehold, Rue headed into his house, returned with a gun, and began shooting at Chaney. The issue of whether Rue was justified in returning after he had already retreated thus was squarely before the jury.

### Argument of counsel

During closing argument, the State focused on the fact that Rue came back outside of the house, telling the jury

> Did he have to come back out? Would a reasonable person have come back out? I submit to you, no. He did not act as a reasonable person would have. There was no threat. Now, he claims, "I don't know where Gerald Chaney was at that time. All I wanted to do is protect my family, protect my home, and I was in fear for my life."

\* \* \*

> Where is the threat? At that point in time the Defendant saw there was no threat.

\* \* \*

> There was no threat to the Defendant at that point in time. That's the point in time you will look at if you are going to give this man a self-defense claim. . . .

\* \* \*

> The Defendant has a duty to retreat. Before he makes the decision as a human being that can take another human being's life, you have to make the analysis in your head before you do whether it's safe for you to get away from the situation. The law states that you have a duty to retreat.

The State's closing argument emphasized the fact that Rue returned to the scene after retreating, and focused on the self-defense instruction that he had no right to do so. The jury charge, the facts, and the argument of counsel prevented the jury from considering the issue of whether Rue was justified in coming out of the house—an issue that is pivotal to Rue's defensive theory. We therefore hold that the charge error caused harm and requires reversal of his conviction.

### Conclusion

We hold that the trial court erred in refusing to submit a defensive instruction on the use of deadly force to prevent aggravated kidnapping accomplished by force. We therefore reverse the judgment of the trial court and remand the cause for a new trial.